**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis J. T. TSUI, Defendant-Appellant.**

**No. 80–1543.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1981.

Decided May 26, 1981.

Wallace W. Weatherwax, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Ronald G. S. Au, Honolulu, Hawaii, for defendant-appellant.

Before TANG and FLETCHER, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

Dennis J. T. Tsui (Tsui) appeals his judgment of conviction and sentence for income tax evasion in violation of 26 U.S.C. § 7201 and the District Court's denial of his motion for a new trial.

We note jurisdiction and affirm.

*THE CHARGE AND FACTS:*

Tsui, an assistant branch manager for a bank, was charged with receiving a substantial amount of unreported income during taxable year 1973. The moneys were received in connection with several real estate transactions financed by THC Financial Corporation (THC), an industrial loan company. Walter Wee (Wee), a vice-president of THC and the loan officer primarily involved in the subject transactions, also allegedly received moneys from those deals, possibly as commercial bribes.

Tsui did not file tax returns for the tax years 1974, 1975, and 1976. In 1977, he was notified that he was to be deposed with regard to an investigation of THC, which had become bankrupt. While consulting with his attorney on the THC matter, Tsui claims that he incidentally inquired about his tax liability. On the advice of his attorney, Tsui filed an amended tax return for

1973 in October 1977, reporting $10,000 in previously unreported income and filed returns for the later years.

The Government's case-in-chief revealed that Wee probably received money from a real estate developer who had received a substantial loan from THC in which Wee had participated as a loan officer. There was testimony that Wee received money out of a commission for another sale financed by THC. It was apparent that THC was then the subject of both criminal and civil investigations and that the IRS was investigating Wee's tax liability.

Tsui's major defense was that Wee had promised to pay all taxes due on the moneys Tsui received. Wee was called as the first defense witness. He was represented by counsel. Wee refused to answer the first question asked of him and indicated to the court that he would refuse to answer all substantive questions. Although Tsui objected, the court recognized Wee's right to claim the privilege against self-incrimination.

The defense then called Kenneth Ono, the criminal investigator primarily involved with the IRS investigation of Tsui. The court restricted attempted interrogation of Ono concerning Wee's alleged receipt of moneys and any IRS investigation of Wee. When defense counsel indicated that he had further questions that the court had foreclosed, the court requested an offer of proof. The court ruled that the testimony sought was irrelevant.

Tsui's motion for a new trial was based upon several contentions, one of which was that the court should not have permitted Wee to assert a blanket claim of Fifth Amendment privilege. Tsui asserted that Wee could have been forced to answer questions regarding activities occurring in 1973, because the applicable statutes of limitation would bar prosecution for those activities.

*ISSUES ON REVIEW:*

1. Did the court err in failing to adequately determine the validity and scope of

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Wee's assertion of his Fifth Amendment privilege not to incriminate himself?

2. Were evidentiary rulings restricting defense interrogation of a Government agent erroneous?

*DISCUSSION*:

*Issue 1*:

■ The Supreme Court has held that in order to sustain a claim of Fifth Amendment privilege, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951). The witness must be faced with substantial hazards of self-incrimination that are real and appreciable, and must have reasonable cause to apprehend such danger from direct answers to questions asked. *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

In *United States v. Pierce*, 561 F.2d 735 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978), this court held that:

A proper application of [the *Hoffman*] standard requires that the Fifth Amendment claim be raised in response to specific questions propounded by the investigating body. This permits the reviewing court to determine whether a responsive answer might lead to injurious disclosures. Thus a blanket refusal to answer any question is unacceptable.

561 F.2d at 741 (citations omitted). *Accord, United States v. Malnik*, 489 F.2d 682, 686 (5th Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974). *See United States v. Sanders*, 591 F.2d 1293, 1298 n.9 (9th Cir. 1979) (trial judge "must inquire whether there are questions which can be answered without forcing the witness to invoke the privilege"); *United States v. Bautista*, 509 F.2d 675, 678 (9th Cir.), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (trial judge "would have been re-quired to pass upon each question asked and determine . . . whether an injurious disclosure could result from.an answer"); *United States v. Ellsworth*, 460 F.2d 1246, 1248 (9th Cir. 1972) (trial judge's order restricting interrogation of witness "improperly impose[d] a blanket assertion of the self-incrimination privilege before any questions are asked"). The court reasoned that it could not, in the absence of specific questions, determine whether responsive answers might lead to injurious disclosures. *Pierce*, 561 F.2d at 741.

■ In this case, as in *Pierce*, the District Court accepted a witness' blanket assertion of the Fifth Amendment privilege rather than forcing the witness to assert the privilege in response to specific questions. As we said in *Pierce*, this procedure is unacceptable in the ordinary case. Because the court usually "cannot speculate and say that any response to all possible questions would or would not tend to incriminate the witness," *id.* (quoting *United States v. Malnik*, 489 F.2d at 686), the court must require the witness to assert the privilege in response to specific questions. Even when the District Court is satisfied that the witness has a valid Fifth Amendment claim with regard to some issues, the court must permit questioning to establish the scope of the witness' claim and to determine whether there are other issues as to which the witness would not be able to assert the privilege. *Pierce*, 561 F.2d at 741; *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980).

■ We are persuaded, however, that this case falls within an exception to the general rule stated in *Pierce*. Here, the District Court was in a position to "say that any response to all possible questions . . . would tend to incriminate the witness." The District Court knew from the Government's case-in-chief that Wee was up to his neck in criminal investigations and that further passing-of-the-blame questioning would only lead to answers which would, in all probability, furnish a link in the chain of evidence needed to prosecute Wee or lead to

evidence having a tendency to incriminate him. *Hoffman*, 341 U.S. at 486–87, 71 S.Ct. at 818–19, and *Neff*, 615 F.2d 1239–40.

Tsui does not assert that he wished to question Wee about any matters other than the real estate transactions which were the subject of the criminal investigations. Instead, he claims that Wee could no longer be prosecuted for those transactions and thus could not assert the Fifth Amendment privilege. The Government maintains that an IRS tax violation prosecution for the year 1973 would not be barred by the applicable limitations period, and suggested further that some of Wee's answers concerning his activities in 1973 would in all probability lead to evidence relevant to a prosecution for later years. We agree. It takes no speculative mood to infer that the District Court thought so, too.

A trial court may sustain a claimed right to refuse to testify if the court, based on its knowledge of the case and of the testimony expected from the witness, can conclude that the witness could "legitimately refuse to answer essentially all relevant questions." *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980), [*quoting United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975)]. *Accord, United States v. Reese*, 561 F.2d 894, 900 (D.C. Cir. 1977). *Cf. United States v. Bautista*, 509 F.2d 675, 678 (9th Cir.), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (motion for new trial to permit testimony of a Government informer properly denied on basis of informant's privilege as to the only answer of value to the defendant). Here, the trial court properly drew such a conclusion.

■ Furthermore, Tsui carried the new trial motion burden of showing that additional evidence on retrial would probably produce an acquittal, a requirement for the granting of a motion for a new trial. *United States v. Krasny*, 607 F.2d 840, 843 (9th Cir. 1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980). Counsel for Tsui was allowed an opportunity at the hearing on the motion for a new trial to make an offer of proof as to what testimony Wee might give on retrial. He failed to do so. The lack of a showing of reversible prejudice to Tsui's defense is glaring by its absence.

We conclude that the District Court did not abuse judicial discretion in allowing Wee the broad blanket privilege against self-incrimination under the posture of the facts in this case.

*Issue 2:*

The main thrust of Tsui's contention under this issue is that the District Court unjustly restricted the use of leading questions to the IRS investigator Ono as an adverse witness. It is true defense counsel was refused answers to some leading questions. However, for the most part the District Court refused questioning on the grounds of relevancy.

■ The District Court's ruling on the use of leading questions is subject to reversal only for an abuse of the court's discretion. *See United States v. O'Brien*, 618 F.2d 1234, 1242 (7th Cir. 1980); *Mitchell v. United States*, 213 F.2d 951, 956 (9th Cir. 1954). *See also* 3 Wigmore, Evidence § 770 at 157 (Chadbourn rev. 1970). The discretionary standard also extends to a ruling on whether a witness is adverse. *See Nutter v. United States*, 412 F.2d 178, 183 (9th Cir. 1969), *cert. denied*, 397 U.S. 927, 90 S.Ct. 935, 25 L.Ed.2d 107 (1970).

Tsui argues that he should have been allowed to ask leading questions of investigator Ono as an adverse witness. There is some merit to this contention. *See United States v. Bryant*, 461 F.2d 912, 918–19 (6th Cir. 1972). *Cf. United States v. Freeman*, 302 F.2d 347, 351 (2d Cir. 1962), *cert. denied*, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963) (error to preclude impeachment of Government agents called as defense witnesses, because defense should be given "every reasonable leeway in bringing out whatever may be relevant" in interrogation of Government agents).

■ The argument per se is not without substance. However, defense counsel was permitted to make an offer of proof as to

Ono's anticipated testimony if interrogated. The District Court found the offer wanting for relevancy, and so do we. Therefore, even if the District Court's refusal to consider Ono an adverse witness was erroneous, the error was not so prejudicial as to require reversal. *See Nutter v. United States*, 412 F.2d 178, 182–183 (9th Cir. 1969), *cert. denied*, 397 U.S. 927, 90 S.Ct. 935, 25 L.Ed.2d 107 (1970); *Freeman*, 302 F.2d at 351–352.

The District Court did not abuse judicial discretion in any of the evidentiary rulings. Fed.R.Evid. 611 and 10 Moore's Federal Practice § 611.11 (2d ed. 1979). The District Court's denial of Tsui's motion for a new trial was well within judicial discretion.

The judgment of conviction and sentence entered on July 25, 1980 is affirmed.

AFFIRMED.