**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nathaniel MOORE, Jr.,
Defendant-Appellant.**

**No. 80–1839.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1981.

Decided July 30, 1982.

Rehearing Denied Sept. 24, 1982.

---

Michael J. Treman, Santa Barbara, Cal., for defendant-appellant.

Paul H. Rochmes, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER and NORRIS, Circuit Judges, and EAST,* District Judge.

FLETCHER, Circuit Judge:

Appellant Nathaniel Moore was convicted of violating 18 U.S.C. § 1708 (1976) (unlawful receipt of mail). The sole issue on appeal is the propriety of the district court's decision to excuse Lembric Moore from testifying at appellant's trial. The district court based its decision to honor Lembric's refusal to testify on his claim of a fifth amendment privilege against self-incrimination, even though Lembric already had pled guilty to one count of the indictment against him and the other counts had been dismissed.

We note jurisdiction under 28 U.S.C. § 1291 (1976), and affirm appellant's conviction.

## FACTS

On August 1, 1980, a United States Postal Service delivery jeep was broken into and mail, including welfare and treasury checks, was stolen. Later that day, acting on a mail theft report, five Los Angeles County Deputy Sheriffs went to a house at 9004 South Compton Avenue to conduct an investigation. The deputies approached the house and found several opened letters on the front porch. Through the open front door, one officer could see someone sitting on a couch examining a stack of letters. Upon seeing the officer, the individual ran toward the back of the house. Three of the officers immediately proceeded around the house toward the rear while the other two entered through the front door.

When they reached the rear of the house, the officers saw two individuals throwing mail into a fire. Upon seeing the officers, these individuals ran into the house. Nathaniel Moore, Lembric Moore, and a third individual were arrested inside the house. The officers then seized letters and checks from the house and partially burned letters from the fire in the backyard.

Two officers later identified appellant, Nathaniel Moore, and his brother Lembric as the two individuals seen burning mail in the backyard. Nathaniel denied burning the mail. Instead, he stated that he had just returned home and was in one of his sister's bedrooms when the police came in and arrested him. Lembric pleaded guilty to one count of unlawful receipt of first class letters.

At the conclusion of Lembric's Rule 11 guilty plea hearing, counsel for Nathaniel informed the court that he wanted to call Lembric as a witness at Nathaniel's trial. Lembric's attorney advised his client to assert his fifth amendment right not to testify. Lembric then stated under oath that if he were called as a witness at Nathaniel's trial, he would refuse to testify on grounds of self-incrimination. The trial judge ruled that because Lembric could be prosecuted on other charges, the court would honor his fifth amendment claim and not permit him to be called as a witness.

Nathaniel was tried before a jury and convicted of unlawful possession of mail. The sole issue on appeal is whether the trial court erred in not compelling Lembric to testify at Nathaniel's trial.

## ANALYSIS

### A. The Scope of the Fifth Amendment Privilege

Nathaniel argues that, by pleading guilty and testifying at his Rule 11 hearing, Lembric waived his fifth amendment privilege against self-incrimination and is, therefore, subject to Nathaniel's right to secure witnesses in his defense. This argument sweeps too broadly.

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

■ An accused's right to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his fifth amendment privilege. *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978). A voluntary guilty plea, such as Lembric's, is a waiver of the fifth amendment privilege only in regard to the crime that is admitted; the defendant retains the right against self-incrimination as to any crimes for which he may still be prosecuted. *United States v. Pierce*, 561 F.2d 735, 738 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978); *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). A co-defendant who pleads guilty to one count of an indictment cannot be forced to testify by another defendant when there is still a genuine possibility that the pleading co-defendant could be prosecuted for other charges, either under the original indictment or in some later proceeding. *Roberts*, 503 F.2d at 600. *See also United States v. Yurasovich*, 580 F.2d 1212, 1218 (3d Cir. 1978); *United States v. Johnson*, 488 F.2d 1206, 1209 (1st Cir. 1973). Thus, Lembric's testimony at his Rule 11 hearing did not result in a waiver of his fifth amendment privilege as to other matters.

■ The fact that Lembric retains his fifth amendment privilege does not end the inquiry, however. It is also necessary to determine the proper scope of the privilege. The most precise guidance for determining the extent of a claimed privilege against self-incrimination is found in *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). *Hoffman* holds that in order to sustain a claim of privilege under the fifth amendment, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. at 818. In *Pierce*, this court held that:

A proper application of [the *Hoffman*] standard requires that the Fifth Amendment claim be raised in response to specific questions propounded by the investigating body. This permits the reviewing court to determine whether a responsive answer might lead to injurious disclosures. Thus a blanket refusal to answer any question is unacceptable.

561 F.2d at 741 (citations omitted);[1] *see United States v. Sanders*, 591 F.2d 1293, 1298 n. 9 (9th Cir. 1979); *United States v. Ellsworth*, 460 F.2d 1246, 1248 (9th Cir. 1972).

■ We have recognized only one exception to the rule announced in *Pierce*. In *United States v. Tsui*, 646 F.2d 365, 367–68 (9th Cir. 1981), we found "an exception to ... *Pierce* ... [where,] based on its knowledge of the case and of the testimony expected from the witness, [the trial court] can conclude that the witness could 'legitimately refuse to answer essentially all relevant questions.'" *Id.* (quoting *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980)). This exception, however, is a narrow one, only applicable where the trial judge has some special or extensive knowledge of the case that allows evaluation of the claimed fifth amendment privilege even in the absence of specific questions to the witness.

### B. Lembric Moore's Fifth Amendment Claim

■ In the instant case, the trial judge found that, because Lembric might be subject to state or other federal prosecution for his role in the mail theft, he had a valid fifth amendment claim against self-incrimination. The trial judge, however, allowed

---

1. The reasoning behind the *Pierce* rule is sound. Where a potential witness makes a general assertion of the privilege against self-incrimination, a reviewing court cannot possibly "anticipate every question that might be asked and conclude that each would present a distinct possibility of self-incrimination if answered ...." *United States v. Malnik*, 489 F.2d 682, 686 (5th Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974). An unprobed, blanket refusal to testify would force a reviewing court to engage in such unacceptable speculation in order to evaluate the claimed privilege.

Lembric to assert a "blanket refusal to answer any question." *Pierce*, 561 F.2d at 741.[2] Nothing in the record indicates that Lembric could have claimed privilege to essentially all relevant questions, nor does the record indicate any special knowledge by the trial judge in this case that would have allowed him to make such a determination. The instant case is unlike *Tsui*, where "[t]he District Court knew from the Government's case-in-chief that [the potential defense witness] was up to his neck in criminal investigations and that further passing-of-the-blame questioning would only lead to answers which would, in all probability, furnish a link in the chain of evidence needed to prosecute [the witness] or lead to evidence having a tendency to

incriminate him," *Tsui*, 646 F.2d at 367–68. Here, when Lembric asserted his fifth amendment refusal to testify at Nathaniel's trial, the district judge had done no more than accept a Rule 11 statement from Lembric admitting guilt to one count of a two-count indictment. Lembric's Rule 11 statement gave the district judge no special knowledge of either Lembric's susceptibility to further criminal prosecution[3] or the nature of Lembric's unprivileged testimony favorable to Nathaniel. Accordingly, the district court erred when it accepted Lembric's blanket refusal to testify.

■ It is, however, axiomatic that not every trial error, even one of constitutional dimension, requires reversal of a criminal conviction. Where, as here, the challenged

2. In *Tsui*, we rejected the idea that, absent special circumstances, a potential defense witness could avoid testifying by making a blanket assertion of his fifth amendment privilege. 646 F.2d at 367. We see no reason to apply a different rule where the witness sought by the defendant is a co-defendant who already has pled guilty and who is therefore no longer a participant in the case. In such a situation, the pleading co-defendant is much like any other potential witness.

3. The following colloquy between the court, defendant's attorney, and the Government attorney indicates the degree of uncertainty about Lembric's potential criminal liability:

THE COURT: What are you going to do about U.S. versus Roberts? Look at that. Have you looked at that case?

MR. TREMAN [defendant's attorney]: Your Honor, the Roberts case, as I read it, deals with a situation in which I think . . . he pleads guilty to one count and there are six counts remaining outstanding. That is not the factual situation in this case.

In this case he was charged in two counts, pled guilty to one and one count was dismissed. It is not being held pending sentencing. That count has been dismissed by the government.

.      .      .      .      .

THE COURT: What does the government say, Mr. Rochmes?

MR. ROCHMES: Well, your Honor, this is essentially a dispute between two defendants. . . . I have stated that I do not know whether it would be possible for the government to bring further charges in Federal Court based on this offense.

Mr. Treman and I discussed this very briefly last night and he said he thought it would be precluded by the Speedy Trial Act.

I have also indicated that state charges could be brought for receiving stolen property and that there would not be a problem of double jeopardy because different elements are involved.

I think if Mr. Treman has any law to the contrary or wishes an opportunity to find some, he should have that opportunity.

THE COURT: Excuse me. He doesn't know whether the government could bring additional charges or not. That was merely a discussion of the two of you had.

MR. ROCHMES: All right. Well, let's assume then for the sake of policy the government would not bring additional federal charges but that the state; we have no control over what the state would do and that it would be possible, as far as my understanding of double jeopardy law, it would be possible for the state to bring charges of receiving stolen property.

If Mr. Treman feels that that is incorrect, I don't believe it should just be an ad hoc speculation between us and that maybe he should have an opportunity over the lunch break or at some point to indicate to you if there are any cases that hold that there is no Fifth Amendment privilege here. I believe there is one.

THE COURT: Well, it would seem to me that there is one on the ground that he could be charged in the state with respect to this crime.

The level of speculation concerning Lembric's potential criminal liability is a far cry from the situation in *Tsui*, where the district court "knew from the Government's case-in-chief that [the potential witness] was up to his neck in criminal investigations." *Tsui*, 646 F.2d at 367.

district court action involves error of constitutional magnitude, we affirm only if we can say that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Hall*, 650 F.2d 994, 998 n. 6 (9th Cir. 1981); *United States v. Valle-Valdez*, 554 F.2d 911, 915 (9th Cir. 1977). Two police officers testified that Nathaniel Moore was one of the two individuals seen burning mail at the time of the arrests. Moreover, the officers testified that Nathaniel was arrested in the kitchen along with his co-defendants and not in a bedroom as appellant claims. Appellants' trial counsel made no offer of proof regarding the substance of Lembric's unprivileged exculpatory testimony. On these facts, where there is such clear evidence of guilt, we find the trial judge's erroneous failure to probe with specific questions Lembric's assertion of a fifth amendment privilege, harmless beyond a reasonable doubt.

We hold, therefore, that although the trial judge committed error in accepting Lembric's blanket assertion of his fifth amendment privilege without further inquiry in keeping with *Pierce*, the error does not warrant reversal of appellant's conviction. The conviction is, therefore, AFFIRMED.