UNITED STATES of America

v.

**John A. THORNTON, Appellant.**

**No. 83–1833.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 29, 1984.

Decided May 1, 1984.

Susan Hicks * with whom Steven H. Goldblatt, Washington, D.C. (appointed by this Court), Samuel Dash, Washington, D.C., and Norman A. Townsend, Alexandria, Va., were on the brief, for appellant.

Daniel M. Cisin, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before WALD and MIKVA, Circuit Judges, and DAVIS,** Circuit Judge for the United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

John A. Thornton appeals his conviction for unlawful possession of a controlled substance (cocaine) with intent to distribute, a violation of 21 U.S.C. § 841(a). Thornton challenges his conviction on two grounds. First, he contends that the district court's acceptance of a blanket fifth amendment privilege, asserted by an important defense witness, violated his sixth amendment right to compulsory process. Second, Thornton claims that the district court improperly denied his motion to suppress evidence taken from his person because, according to Thornton, the search that produced the evidence was unconstitutional. For the reasons set forth below, we find that both of Thornton's challenges lack merit.

---

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

** Sitting by designation pursuant to 28 U.S.C. § 291(a).

## I. BACKGROUND

In the early evening on March 16, 1983, Detective Leon Owens of the Metropolitan Police Department (MPD) and several other police officers entered an apartment building in Southeast Washington, D.C. in order to execute a search warrant for a particular apartment in the building. While the other officers positioned themselves to enter the apartment, Detective Owens stood in the hallway just inside the front door of the building. From this vantage point, Owens saw two men, later identified as Thornton and Charlie Cowser, walking up the stairway from the basement. When the two men reached the top of the stairs, both looked startled, and Cowser yelled, "Police!"[1] At this time, according to Owens' testimony, Owens saw Thornton place a small plastic package that resembled "the way narcotics are packaged on the street" into the right rear pocket of his pants. Tr. 18.

Owens stopped Thornton, advised him of his rights, and explained that he was not yet under arrest. Owens then began to "pat down" the appellant's coat, and removed a camera from his coat pocket. After ordering Thornton to turn around, Owens next lifted the back of Thornton's coat and removed the plastic package from his right rear pants pocket. Owens noticed that the package contained several rolled-up plastic bags of white powder. Suspecting that the package contained narcotics, Owens arrested Thornton. Owens then conducted a more thorough search of Thornton incident to the arrest, and found another similar package in his right coat pocket.

At a pretrial suppression hearing, Thornton testified that prior to his arrest he and Cowser had been in Cowser's basement apartment, where he had injected heroin and cocaine. While Thornton admitted that he was carrying narcotics when he was arrested, he testified that he had placed the packages containing the narcotics in his pockets and had securely fastened his jacket before he began to walk up the stairs. Thornton therefore asserted that Owens could not have seen him place a package in his back pocket, and argued that Owens had lacked probable cause to conduct the initial search that resulted in the arrest.

Alvonia M. Branch, who lived in Cowser's basement apartment, testified on behalf of the defense. She said that Cowser had left the apartment alone to play the lottery, and that just after he left, she came out of the apartment to give him another lottery number. According to Branch, she then saw both Cowser and Thornton at the top of the stairs. While acknowledging that she did not pay attention to what Thornton did with his hands, Branch testified that she did not see him reach into his pocket.

In an attempt to corroborate further his account of the facts, Thornton called Cowser as a witness. After preliminary questioning, however, Cowser, who had been arrested at the same time as Thornton for possession of cocaine and drug paraphernalia, invoked the fifth amendment privilege against self-incrimination, and refused to answer the question posed by the defense attorney, "Would you, at this point, tell His Honor what happened at that time [*i.e.*, the time of Thornton's arrest]?"[2] The district

---

1. Thornton testified that some of the MPD officers, and not Cowser, had yelled, "Police!" Tr. 92.

2. After the defense counsel posed this question, the following colloquy took place:

> THE COURT: All right, before you answer that question, Mr. Cowser: I know you have Mr. Christiansen representing you at this point. Have you consulted with Mr. Christiansen about this testimony—your lawyer there?
> THE WITNESS: Yep.

> THE COURT: All right.
> THE WITNESS: I have.
> THE COURT: Has he advised you, and the Court will again advise you in any event, that you have a right not to give testimony that could incriminate you in the commission of an offense, or that could be used against you to find out evidence that could incriminate you in the commission of an offense.
> THE WITNESS: Yes, sir.
> THE COURT: You understand you have that right not to answer questions if you desire not to do so?

judge, recognizing that Cowser was at that time facing charges in the Superior Court for the District of Columbia arising out of the same events, sustained Cowser's refusal "to testify any further about any involvement or your activities on the evening in question," Tr. 51, despite the likelihood that Cowser could be a "vital witness" for the defense in the suppression hearing, Tr. 54.

After the pretrial hearing, the district court denied Thornton's motion to suppress evidence. Finding that Detective Owens' testimony represented "the credible version of what happened that evening,"[3] the district court held that the search of Thornton and the seizure of evidence had been based on a reasonable suspicion, supported by objective and identified circumstances, that Thornton was engaged in criminal activities. *See United States v. Thornton*, Crim. No. 83–00053 (June 20, 1983). After this ruling, Thornton agreed to a stipulated trial. *See United States v. Thornton*, Crim. No. 83–00053 (July 15, 1983) (Stipulation of Evidence). The district court found Thornton guilty, and sentenced him to a three-year prison term, with an additional three-year term of special parole. This appeal followed.

## II. COWSER'S FIFTH AMENDMENT PRIVILEGE AND THORNTON'S SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS

The Constitution establishes the right of a criminal defendant "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. As the Supreme Court has elaborated, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *see Chambers v. Mississippi*, 410 U.S. 284,

---

THE WITNESS: Yes.

THE COURT: Before you answer any questions about what was going on there that day, and understanding also that you are presently, as I understand it, under charges arising out of the arrest in the Superior Court for the District of Columbia, do you wish to answer any more questions, or do you wish to assert your Fifth Amendment privilege?

THE WITNESS: Yeah—I'd prefer not to say any more.

THE COURT: All [r]ight. Mr. Cowser—is it your understanding that if you were to answer any further questions about what was going on there that day that it could incriminate you in the commission of an offense? Is that your fear?

THE WITNESS: Yes, sir.

THE COURT: Mr. Christiansen?

MR. CHRISTIANSEN [representing Cowser]: Yes, sir.

THE COURT: Did you discuss this matter with Mr. Cowser?

MR. CHRISTIANSEN: I have, sir.

THE COURT: And is it your position, in his behalf, that he is appropriately asserting his Fifth Amendment privilege?

MR. CHRISTIANSEN: It is, sir.

THE COURT: Have you discussed with him the testimony that could be given today?

MR. CHRISTIANSEN: I have, Your Honor.

THE COURT: Have you advised him that [it is] in his best interest to assert a Fifth Amendment privilege?

MR. CHRISTIANSEN: Yes, Your Honor.

THE COURT: Mr. Cowser, because of the pendency of the charges against you arising out of this arrest, and your reluctance to testify, and your insistence upon taking the Fifth Amendment privilege, the Court is going to sustain your request not to testify any further about any involvement or your activities on the evening in question.

Tr. 49–51.

**3.** The district judge questioned the credibility of Thornton's testimony due to Thornton's personal interest in the outcome of the case and his admission that he had injected cocaine and heroin a few minutes before the events in question. *See United States v. Thornton*, Crim. No. 83–00053, mem. op. at 6–8 (June 20, 1983) (denial of motion to suppress). The district judge did not give much credence to Branch's testimony because (1) Branch testified to prove that Thornton had not put anything in his pockets as he mounted the stairs, but at the same time she admitted that she did not pay attention to what Thornton did with his hands, and (2) her testimony conflicted substantially with Thornton's about Thornton's activities immediately prior to his arrest. *Id.* at 6. On the other hand, he assigned the greatest credibility to Detective Owens' testimony, due to Owens' long experience in narcotics work and his ability to view the events from his vantage point in a well lit area.

Thornton does not challenge the district court's findings of fact. Our review is therefore confined to the legal rulings made by the district court.

302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973).

■ The accused's right to compulsory process, however, does not include the right to compel a witness to waive his fifth amendment privilege. *See, e.g., United States v. Reese,* 561 F.2d 894, 899–900 (D.C. Cir.1977); *Bowles v. United States,* 439 F.2d 536, 541–42 (D.C.Cir.1970) (en banc) (right to compulsory process does not include right to have the witne₁,s assert fifth amendment privilege before the jury, let alone to have the witness testify), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). The issue in this case, however, is not whether Cowser retained his fifth amendment privilege; rather, it is whether the district court acted properly in sustaining Cowser's claim of privilege as to his entire testimony regarding the circumstances of Thornton's arrest. For the reasons explained below, we find that the district court acted well within its discretion in determining the proper scope of Cowser's fifth amendment privilege.

■ As this court has observed, when balancing the sixth amendment right of the accused and the fifth amendment right of the witness, "the trial judge must make an appropriate inquiry into the basis of the privilege claimed by the witness, and may not permit the witness to refuse to testify where a narrower privilege will adequately protect him." *United States v. Reese,* 561 F.2d at 900; *see also United States v. Moore,* 682 F.2d 853, 856 (9th Cir.1982); *United States v. Melchor Moreno,* 536 F.2d 1042, 1046–47 (5th Cir.1976). We believe that the district court satisfied this standard under the circumstances of this case. At the time of the hearing, Cowser was facing charges pending against him for possession of cocaine and paraphernalia found on his person at the same time as Thornton's arrest. Accordingly, if Cowser had testified about the circumstances of

Thornton's arrest, it is difficult to see how he could have avoided testifying about the circumstances of his own arrest, a topic obviously within the scope of his fifth amendment privilege.[4]

Thornton nevertheless contends that "because the trial court in this case made no effort to determine if there were limited areas about which Cowser could safely testify, and because it is apparent from the record that such areas exist," the case should be remanded to give the defense an opportunity to pursue a narrower line of inquiry that might be outside the scope of Cowser's fifth amendment privilege. Appellant's Brief at 11. Specifically, appellant suggests that Cowser might testify narrowly as to "whether Thornton put an object in his pocket immediately before his arrest, as Owens had testified." *Id.* at 16.

■ To sustain the invocation of the fifth amendment privilege, the district judge must determine only whether there is a reasonable basis for believing a danger to the witness *might* exist in answering a particular question, for "if the witness, upon interposing his claim, were required to prove the hazard ... he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *see Reese,* 561 F.2d at 900. When the witness refuses to answer a particular question, the trial judge has a duty to determine whether a narrower privilege would suffice to protect the witness from danger while permitting the defendant to elicit desired testimony. *See Reese,* 561 F.2d at 900; *see also Moore,* 682 F.2d at 856; *Melchor Moreno,* 536 F.2d at 1049. Usually, a trial court cannot speculate whether all relevant questions would or would not tend to incriminate the witness; accordingly, the court normally requires the privilege to be asserted in response to

---

**4.** Because "a witness may not testify as to the broad outlines of a matter and then assert a privilege as to the particulars," Cowser could reasonably have feared self-incrimination even if his initial testimony would not have directly implicated his own criminal activity. *United States v. Reese,* 561 F.2d at 901; *see Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951).

specific questions. In unusual cases, however, a district judge may sustain a blanket assertion of privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering *any* relevant question. *See, e.g., Reese,* 561 F.2d at 899–900 (blanket privilege sustained because "the only relevant matters" that the witness might have testified about were all privileged); *United States v. Tsui,* 646 F.2d 365, 367–68 (9th Cir.1981) (trial court may accept blanket privilege where, "based on its knowledge of the case and of the testimony expected from the witnesses, [it] can conclude that the witness could 'legitimately refuse to answer all relevant questions' ") (quoting *United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir.1980)), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

We believe that the district court properly concluded that *any* testimony relevant to the circumstances surrounding Thornton's arrest could tend to compromise Cowser's ability to defend himself against pending criminal charges. It is the trial judge's role and responsibility to assess the plausibility of the claim of fifth amendment privilege:

> We find no merit in [the appellant's] assertion that the court erred in supposing that [the witness'] testimony might actually tend to incriminate him. A trial judge may appraise a claim of privilege in light of his "personal perception of the peculiarities of the case" and should not

be overruled unless it is "perfectly clear" that the witness is mistaken and that the answer "cannot possibly" incriminate.

*Reese,* 561 F.2d at 900 (quoting *United States v. Johnson,* 488 F.2d 1206, 1209 (1st Cir.1973)); *Bowles v. United States,* 439 F.2d at 541–42. Given the "peculiarities of th[is] case"—that the defendant and the witness were arrested at the same time on similar charges, arising out of activities in which they very well might have been jointly involved [5]—we do not think it "perfectly clear" that Cowser would not have incriminated himself had he testified as to any relevant events.

Thus, we do not think the district judge erred in sustaining Cowser's blanket assertion of privilege. Given the determination that Cowser *could* legitimately assert the privilege as to any relevant question, and given that Cowser *did* assert such a privilege, we do not think the district judge was under an obligation to subject Cowser to a searching inquiry for the purpose of determining whether he *would choose not to assert* the privilege to which he was entitled. Indeed, such a procedure could be seen as an attempt to intimidate or harass the witness into waiving his constitutional rights. Perhaps if the defense counsel had proffered a particular line of questioning, supported by reasons to believe that the witness would not invoke his fifth amendment privilege as to those questions, the district judge might have permitted such

---

**5.** For example, Cowser might have reasonably sensed danger in admitting even that he had accompanied Thornton up the stairs. After all, Thornton had testified that he had injected heroin and cocaine in Cowser's apartment, while Branch had testified that Cowser left his apartment alone. Perhaps Cowser's answers could have implicated Cowser in illegal activities just prior to going up the stairs. Similarly, the question the defense now proposes as a narrower inquiry—"whether Thornton put an object in his pocket immediately before his arrest"—could implicate Cowser in criminal activities if, for example, Cowser had provided Thornton with the substance, or, for example, Cowser and Thornton were involved jointly in a scheme to distribute cocaine and heroin.

In this regard, we recall the words of Chief Justice Marshall:

> If a direct answer to [a question] may criminate himself, then [the witness] must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims ....
>
> Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself.

*United States v. Burr,* 25 Fed.Cas. 38, 40 (1807), *quoted in Reese,* 561 F.2d at 900–901.

questioning. In this case, however, the defense counsel made no such proffer; instead, the defense counsel asked broadly, "Would you, at this point, tell His Honor what happened at that time?"[6] Tr. 18.

Accordingly, we uphold the district court's ruling on the scope of Cowser's fifth amendment privilege.

### III. THE DISTRICT COURT PROPERLY DENIED THORNTON'S MOTION TO SUPPRESS EVIDENCE

Thornton also contends that the searches of his person conducted by Owens were unconstitutional. He claims that Owens' initial search was an unconstitutional warrantless search, (1) not supported by probable cause and (2) not qualified as a "stop and frisk" search under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thornton further argues that the subsequent search incident to arrest was likewise unconstitutional, since the arrest was tainted by the initial search. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Thornton's argument thus relies on his claim that the initial search was unconstitutional. Because we find that the initial search was supported by probable cause, we affirm the district court's ruling.[7]

As a general rule, probable cause to search "exists when circumstances known to a police officer are such as to warrant a person of reasonable caution in the belief that a search would reveal incriminating evidence."[8] *United States v. McEachin*, 670 F.2d 1139, 1142 (D.C.Cir. 1981) (quoting *United States v. Hawkins*, 595 F.2d 751, 752 n. 2 (D.C.Cir.1978) (per curiam)). Under this test, we think that Owens had probable cause to conduct the initial search of Thornton. Owens saw Thornton put a package resembling narcotics in his back pocket. *Cf. Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1538, 75 L.Ed.2d 502 (1983) (probable cause when officer noticed "green party balloon knotted about one half inch from tip" and was "aware that narcotics frequently were packed in [such] balloons"). Owens, a fourteen-year veteran of MPD who had participated in narcotics work for eight years, was quite familiar with common methods of packaging and storing narcotics. Thornton looked startled and placed the package in his back pocket after someone yelled, "Police!" Probable cause is a

**6.** We note that the cases from other circuits relied upon by appellant are consistent with our ruling today. In *United States v. Melchor Moreno*, 536 F.2d 1042 (5th Cir.1976), the Fifth Circuit found that the witness' reason for invoking the fifth amendment privilege did not justify the extension of the privilege to a central area of relevant questioning. The *Melchor Moreno* opinion, however, expressly acknowledged that a blanket claim of privilege should be sustained when the witness could " 'legitimately refuse to answer essentially all relevant questions.' " *Id.* at 1049 (quoting *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir.1975)).

In *United States v. Moore*, 682 F.2d 853 (9th Cir.1982), the Ninth Circuit found the invocation of the fifth amendment privilege to be based on a purely speculative fear because "[n]othing in the record indicat[ed] that [the witness] could have claimed privilege to essentially all relevant questions." *Id.* at 857. As in *Melchor Moreno*, in *Moore* the court expressly distinguished the case in which the witness could " 'legitimately refuse to answer essentially all relevant questions' "; in such cases, a blanket privilege would be permitted. *Id.* at 856 (quoting *United States v. Tsui*, 646 F.2d 365, 368 (9th Cir.1981)).

As we have explained above, in this case Cowser could "legitimately refuse to answer essentially all relevant questions." The district judge was therefore under no duty to "question[ ] Cowser to determine whether he could answer any questions about the incident without incriminating himself," as Thornton suggests. Appellant's Brief at 5. We also find nothing in the record to suggest that the district judge did not "allow[ ] Mr. Thornton's counsel to develop a line of unprivileged testimony." *Id.* As appellant's attorney acknowledged at oral argument, the defense made no attempt at trial to devise such a narrow line of inquiry.

**7.** Because we find the requisite probable cause to search, we hold that Owens' search falls within one of the exceptions to the general requirement to secure a warrant before conducting a search. We therefore do not reach the question whether the search would qualify as a "stop and frisk" search under *Terry v. Ohio*.

**8.** Appellant does not question that this case presented exigent circumstances justifying a warrantless search, assuming probable cause to search existed.

"flexible common sense standard," *Texas v. Brown*, 103 S.Ct. at 1543, which we believe was clearly satisfied by the circumstances of this case, especially considering that Owens entered the apartment building to execute a search warrant for narcotics, and therefore had further cause to be suspicious of Thornton's behavior.[9] *See United States v. Juarez*, 573 F.2d 267, 274–75 (5th Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). Accordingly, we find that the initial search of Thornton was constitutional, and, because the initial search resulted in the discovery of contraband, the subsequent arrest and search were also permissible.

## IV. CONCLUSION

For the reasons set forth above, we find the district court properly sustained Cowser's claim of privilege and denied Thornton's motion to suppress.

*So ordered.*

---

**9.** In any event, we believe that in light of what he witnessed, Owens had probable cause to arrest Thornton *before* the initial search. Even if a formal arrest is not made until after an initial search, the search can be justified as incident to an arrest that "follow[s] quickly on the heels of the challenged search," so long as probable cause to arrest existed before the search began. *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *Bailey v. United States*, 389 F.2d 305, 308 (D.C.Cir.1967). We recognize that Owens told Thornton that he was not under arrest during the initial search. *See supra* at 123. However, we do not think this fact renders the search impermissible as incident to arrest. Thornton suffered no prejudice as a result of Owens' declaration; accordingly, we do not think that this case differs significantly from a case in which the officer said nothing prior to conducting a search. Thus, we believe that the initial search also constituted a permissible search incident to arrest.