139 F.3d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Ashley Vance TOWNSEND, Defendant-Appellant.
 No. 96-10515.
 D.C. No. 96-00158-RGS.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1997.
Decided Feb. 25, 1998.
 
 Appeal from the United States District Court for the District of Arizona Roger G. Strand, District Judge, Presiding.
 Before BRIGHT,** FLETCHER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ashley Vance Townsend appeals his conviction by a jury of two counts of bank robbery and aiding and abetting in violation of 18 U.S.C. § 2113(a) and § 2. Townsend argues the district court erred in denying Townsend's request to call co-defendant Montayne Devaughn Hullaby as a witness and by conducting an in-chambers conference regarding Townsend's request without the presence of Townsend. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Townsend's conviction.
 
 FACTS
 
 3
 Hullaby committed a series of bank robberies in Arizona. This appeal concerns only the two robberies in which the jury convicted appellant Townsend of assisting Hullaby by driving Hullaby away from the crime scenes.
 
 
 4
 On March 20, 1996, an African-American man dressed as a woman robbed $1580.00 in federally insured funds from a Bank of America branch located in Gilbert, Arizona. The robber then ran out of the bank. Teenage boys, who were in the parking lot at this time, saw a man run through a rocky area, jump over bushes and jump in a truck while a bank employee yelled at him. The boys described the truck to the FBI as a dark metallic blue Toyota truck with Arizona license plate number LGW242. The boys described the driver of the truck as a black male either bald or with short hair.
 
 
 5
 On March 21, 1996, Hullaby, while dressed as a woman, robbed $580 .00 in federally insured funds from a Bank of America branch located in Mesa, Arizona. Hullaby ran out of the bank. A bank employee ran out of the bank after Hullaby and saw a blue Toyota pick-up truck driving out of the parking lot.
 
 
 6
 Mesa police officer Robert Scantlebury pursued the blue truck in response to a 911 dispatch call. Officer Scantlebury testified that when the truck stopped he saw two men run from the truck, climb a brick dividing wall, and flee into a neighborhood. A resident of the neighborhood testified that he saw Townsend coming out of a neighbor's bushes and over an adjacent neighbor's fence. Additional officers arrived at the scene and began searching. The police officers found Townsend hiding in an alley trash can with fourteen $20.00 bills in his possession.
 
 
 7
 At trial, Townsend presented as his defense that he was not the driver in the first robbery and that Townsend did not know that Hullaby was going to, or did, commit the second robbery.
 
 
 8
 The parties presented the jury with joint stipulations of fact that: (1) on March 20, 1996, Hullaby entered the Bank of America in Gilbert and $1580 was taken; (2) on March 21, 1996, Hullaby entered the Bank of America in Mesa and $580 was taken; (3) on those dates, the deposits of Bank of America were federally insured; and (4) on those dates, Townsend owned a blue Toyota pickup truck with license plate number LGW242.
 
 
 9
 Joanne Oakley, Townsend's female friend, testified on his behalf as an alibi witness to the first robbery. Oakley testified that Townsend allowed someone to borrow his truck on March 20, 1996. Oakley further testified that at this time Townsend's hair was long on top but short on the sides and back, and he had a mustache and notches in his eyebrow.
 
 
 10
 Townsend testified that on March 20, 1996, he loaned his truck to someone named "Bear" in exchange for drugs. Townsend testified that on March 21, 1996, he and Hullaby were en route to look for drugs with defendant driving his truck. Townsend further testified that Hullaby asked him to stop at the Bank of America to make a deposit. Townsend claimed he did not see Hullaby running from the bank because Townsend was slumped down in his truck smoking crack.
 
 
 11
 Townsend testified that he did not know Hullaby robbed the Bank of America in Mesa until his own arrest. Townsend claimed he evaded police after the robbery because he had drugs in the truck and on his person. Townsend testified that he threw the drugs away as he fled. However, the police failed to recover drugs in the area of the arrest.
 
 
 12
 On July 30, 1996, the first day of Townsend's trial, the district court judge held an in-chambers conference regarding Townsend's request to call Hullaby to testify at trial. The judge, the United States' attorneys, Townsend's attorney and Hullaby's attorney were present. Hullaby and Townsend were not present at this conference. Townsend's attorney stated that when she would call Hullaby, she would first ask Hullaby his name and then whether he knew Townsend. Hullaby's attorney stated Hullaby would plead the Fifth Amendment because his plea agreement had not been accepted. The district court accepted the plea agreement for Hullaby to plead guilty to the second robbery and to obtain a dismissal of charges for the first robbery. Hullaby's attorney stated he would need to look at the possibility of state prosecution and federal conspiracy charges. The district court then ruled that Townsend could call Hullaby. Hullaby's attorney then clarified to the court that his client intended to assert the Fifth Amendment as of their last conversation. The district court then ruled that Townsend could not call Hullaby as a witness because of Hullaby's intent to assert his Fifth Amendment privilege.
 
 
 13
 The jury convicted Townsend as charged in the indictment. On October 15, 1996, the district court sentenced Townsend to 68 months imprisonment on each count, with the sentences to run concurrently. In addition, the district court imposed a three-year term of supervised release with conditions including payment of $1580 in restitution to the Bank of America.
 
 ANALYSIS
 
 14
 A. Acceptance of Hullaby's Assertion of His Fifth Amendment Privilege
 
 
 15
 This court reviews de novo a district court's ruling on a claim of privilege, which involves mixed questions of law and fact. United States v. Rubio-Topete, 999 F.2d 1334, 1338 (9th Cir.1993); United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.1984) (en banc).
 
 
 16
 The Sixth Amendment provides an accused with the right to compulsory process to secure the attendance of a witness. United States v. Trejo-Zambrano, 582 F.2d 460, 464 (9th Cir.1978). The right to compulsory process "does not include the right to compel the witness to waive his Fifth Amendment privilege." Id. However, strict standards control the assertion of the privilege against self-incrimination. In re Grand Jury Proceedings (Chesnoff), 13 F.3d 1293, 1295 (9th Cir.1994) (per curiam). A witness has no Fifth Amendment privilege if his answers could not expose him to a criminal charge. Ullman v. United States, 350 U.S. 422, 431, 76 S.Ct. 497, 100 L.Ed. 511 (1956).
 
 
 17
 In United States v. Pierce, 561 F.2d 735, 741 (9th Cir.1977), this court held that "[a] proper application of this standard requires that the Fifth Amendment claim be raised in response to specific questions propounded by the investigating body. This permits the reviewing court to determine whether a responsive answer might lead to injurious disclosures." Id. (citation omitted). A "blanket refusal to answer any question is unacceptable ." Id. An exception to Pierce exists where the trial court "based on its knowledge of the case and of the testimony expected from the witness, can conclude that the witness could 'legitimately refuse to answer essentially all relevant questions." ' United States v. Tsui, 646 F.2d 365, 368 (9th Cir.1981) (quoting United States v. Goodwin, 625 F.2d 693, 701 (5th Cir.1980)).
 
 
 18
 In United States v. Moore, 682 F.2d 853, 856 (9th Cir.1982), this court held that the district court erred when it accepted a co-defendant's blanket refusal to testify at the defendant's trial when the co-defendant had already pleaded guilty to unlawful receipt of mail despite the possibility of state or other federal prosecution for his role in the mail theft. Id. at 856-57. This court stated that the district court had no special knowledge of either the co-defendant's susceptibility to further criminal prosecution or the nature of his testimony as required to fit under the Pierce exception. Id. at 857.
 
 
 19
 Townsend argues the district court erred in not allowing Townsend to call Hullaby to testify at trial by accepting a "blanket refusal" to answer any question. Townsend relies upon Moore, arguing that the district court was required to ask a series of specific questions for Hullaby's responses. The court did not require Hullaby, who was not present, to respond to questions after the court accepted the plea. In addition, Townsend contends his situation is very similar to Moore in that the district court had only a general and brief statement from Hullaby admitting his guilt to one count of the indictment.
 
 
 20
 In this case, we conclude that the district court erred in accepting a blanket refusal from Hullaby's attorney without asking specific questions or having extensive knowledge of the case. The district court also erred in allowing Hullaby through his attorney to assert the privilege as to all relevant questions. Hullaby had waived the privilege at least as to the second count of the indictment by pleading guilty to it. See Moore, 682 F.2d at 856; Pierce, 561 F.2d at 738. The specific question Hullaby's attorney objected to, whether Hullaby knew Townsend, may not have called for a privileged answer.
 
 
 21
 Reversal of a conviction is not required, even for a constitutional violation, for an error which is harmless beyond reasonable doubt. See Moore, 682 F.2d at 857-58 (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The strong evidence against Townsend included consistent eyewitness identifications, the getaway truck being tied to Townsend by its license number; and after similar robberies police finding Townsend with proceeds from the bank. The clear evidence of Townsend's guilt leads us to conclude that the district court's error in accepting Hullaby's assertion of a Fifth Amendment privilege is harmless beyond a reasonable doubt.
 
 
 22
 B. Whether In-Chambers Conference was a "Critical Stage"
 
 
 23
 Townsend raises for the first time on appeal that the district court erred in conducting an in-chambers conference regarding Hullaby testifying without Townsend's presence. This court reviews the record for plain error when a defendant raises an issue on appeal that was not raised before the district court. United States v. Sherman, 821 F.2d 1337, 1338 (9th Cir.1987). Plain error will only be found if the error was a "highly prejudicial error affecting substantial rights." Id. at 1339 (quoting United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986)).
 
 
 24
 Townsend argues that the pre-trial, in-chambers conference occurred at a "critical stage" of the proceeding, requiring his presence. A defendant's right to be present is based on several constitutional sources including the Fifth and Sixth Amendments. Polizzi v. United States, 550 F.2d 1133, 1137 (9th Cir.1976). This right to be present is not absolute. Id. The right to be present exists only where the defendant's " 'presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge." ' Rice v. Wood, 77 F.3d 1138, 1140 n. 2 (9th Cir.1996) (quoting Kentucky v. Stiner, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). Townsend argues that his presence would have allowed the district court to probe the extent to Hullaby's Fifth Amendment privilege and so his presence would not be "useless ." See id.
 
 
 25
 Moreover, Townsend argues his absence from the conference constitutes structural error requiring automatic reversal because Townsend had the ability to affect the proceeding. See id. at 1141. The Supreme Court has stated that structural errors are the "exception and not the rule." Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). "Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Id. at 579. Structural errors are errors that permeate the "entire conduct of the trial from beginning to end." Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Accordingly, we consider any error resulting from Townsend's absence from the conference does not rise to a structural error and is therefore subject to harmless error analysis. Rice, 77 F.3d at 1141. We decline to decide if the in camera proceeding constituted a "critical stage" because we find that any such error was harmless.
 
 
 26
 Townsend also argues that Rule 43, Fed.R.Crim.P., was violated. Rule 43 requires the defendant to be present at every stage of the trial. This rule provides greater protection than the constitution. United States v. Wheat, 813 F.2d 1399, 1404 (9th Cir.1987). Rule 43 does not require a defendant's presence at a conference or argument involving questions of law. A violation of Rule 43 does not compel reversal unless a reasonable possibility of prejudice is shown. Wheat, 813 F.2d at 1404. We determine that Rule 43 would apply because a decision to accept a claim of Fifth Amendment privilege concerns questions of fact and law. However, we conclude that Townsend has not shown a reasonable possibility of prejudice.
 
 
 27
 Furthermore, any error, whether constitutional or violative of Rule 43, resulting from Townsend's absence from the conference would be harmless beyond a reasonable doubt. It is speculative whether Townsend's presence would have had any impact on Hullaby's assertion of the Fifth Amendment and the trial court's acceptance of that assertion. The clear evidence of Townsend's guilt makes any error harmless. Any error also does not meet the stringent plain error standard.
 
 CONCLUSION
 
 28
 While the district court under the circumstances may have erred in granting Fifth Amendment privilege in chambers to Hullaby not to testify at Townsend's trial and in holding a hearing on this issue without the presence of Townsend as well as the witness Hullaby, these errors amounted to harmless error in this case. Therefore, the conviction is AFFIRMED.
 
 
 
 **
 The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3