## Case No. 14,692e.

### UNITED STATES v. BURR.[1]

#### In re WILLIE.

[Coombs' Trial of Aaron Burr, 67.]

Circuit Court, D. Virginia. June 18, 1807.

WITNESS — PRIVILEGE — INCRIMINATING ANSWER.

[1. In determining the right of a witness to refuse to answer on the ground that his answer might tend to incriminate him, it is the province of the court to judge whether any direct answer to the question proposed will furnish evidence against the witness.]

[Cited in Counselman v. Hitchcock, 12 Sup. Ct. 199.]

[2. If any direct answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict the witness of any crime, he is not bound to answer it so as to furnish matter for that conviction.]

[Cited in Counselman v. Hitchcock, 12 Sup. Ct. 199.]

[3. In such a case the witness must himself judge what his answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot be compelled to answer.]

[Cited in Counselman v. Hitchcock, 12 Sup. Ct. 199.]

[4. The secretary of a person charged with treason cannot refuse to answer whether he has present knowledge of the cipher in which is written a letter purporting to have been written by the accused, as any direct answer could not tend to implicate him.]

---

1 [For reference to the various cases in this series, which, together, embrace a full report of the entire proceedings against Aaron Burr, see footnote to Case No. 14,692a.]

[At law. The questions herein arose upon the proposition of the attorney for the United States to send before the grand jury, then in session considering the charges against Aaron Burr, a certain letter in cipher, addressed to Dr. Bollman under a fictitious name, and alleged to be in the handwriting of Mr. Willie, Burr's secretary. Mr. Willie was called to the stand to prove the authenticity and materiality of the letter.]

Mr. Williams, his counsel, hoped that no question would be put the answer to which might tend to criminate himself.

Mr. MacRae.—Did you copy this paper?

Mr. Williams, (after consulting with his client.)—He says that if any paper he has written have any effect on any other person, it will as much affect himself.

Mr. Wirt.—He has sworn in his deposition that he did not understand the cipher of this letter. How, then, can his merely copying it implicate him in a crime when he does not know its concents?

Mr. MacRae.—We will change our question. Do you understand the contents of that paper?

Mr. Williams.—He objects to answering. He says that though that question may be an innocent one, yet the counsel for the prosecution might go on gradually from one question to another, until he at last obtained matter enough to criminate him.

Mr. MacRae.—My question is not, "Do you understand this letter, and then what are its contents?" If I pursued this course, I might then propound a question to which he might object; but unless I take that course, how can he be criminated?

Mr. Botts.—If a man know of treasonable matter, and do not disclose it, he is guilty of misprision of treason. Two circumstances, therefore, constitute this crime: knowledge of the treason, and concealment of it. The knowledge of the treason, again, comprehends two ideas: that he must have seen and understood the treasonable matter. To one of these points Mr. Willie is called upon to depose. If this be established, who knows but the other elements of the crime may be gradually unfolded so as to implicate him? The witness ought to judge for himself.

Mr. MacRae.—I did not first ask if he copied and then understood it? but first, if he understood it? Had he answered this question in the affirmative, I certainly should not have pressed the other question upon him, because that might have amounted to self-crimination; but, if he did not understand it, it could not criminate him.

Mr. Hay.—I will simply ask him whether he knows this letter to be written by Aaron Burr, or by some one under his authority?

The CHIEF JUSTICE said that that was a proper question.

Mr. Williams.—He refuses to answer; it might tend to criminate him.

THE COURT were of opinion that Mr. Wil-

lie should answer upon oath whether or not he thought that answering the proposed question might have a tendency to criminate himself.

Here a long desultory argument ensued.

CHIEF JUSTICE.—Has the witness a right to refuse to answer?

Mr. Williams.—The knowledge of the treason and concealment of it, amount to a misprision of treason.

CHIEF JUSTICE.—The better question is, Do you understand it?

Mr. Williams.—He ought not to have such a question put to him, because he might be obliged to answer "Yes." He ought not to be compelled to answer, if it might possibly criminate him. The witness is to judge for himself, though the question may not seem to affect him. He referred to the case of Young Goosely [see Case No. 15,230], before referred to by Mr. Randolph.

Mr. Botts.—I will give Mr. Hay the benefit of an authority, —1 MacNal. Ev. 257, 258, —which shows that the possibility of crimination is sufficient to excuse the witness from answering.

Mr. Williams.—What the witness says here tending to his own crimination, may be used as evidence against him on a prosecution. If he answer at all, he is deprived of the privilege given by the law, not to criminate one's self.

CHIEF JUSTICE.—If he be to decide upon this, it must be on oath. He asked Willie whether his answering the question, whether he understood that letter, would criminate himself? He answered, It may in a certain case.

CHIEF JUSTICE.—I wish to consider the question until to-morrow.

GRIFFIN, District Judge, to Mr. Williams.—The Case of Goosely was not as you represented it. It was the court who knew that the witness was one of those who robbed the mail.

Mr. Hay.—The doctrine is most pernicious and contrary to the public good.

Mr. Williams.—The public good does not require the conviction of Colonel Burr so much as to dispense with the law.

It was then agreed that the point should be argued to-morrow, and Colonel Burr's counsel promised to produce their authorities to show that Willie could not be compelled to answer such questions as might, in his own opinion, tend to criminate himself.

The court then adjourned till to-morrow.

[The point was argued at some length on the two following days by Mr. Botts, Mr. Williams, Mr. Martin, and Mr. Wickham on one side, and by Mr. MacRae and Mr. Hay on the other. Mr. Martin contended that "a witness is not compelled to answer when it tends to criminate him, nor where it does not relate to the issue," and cited authorities in support of the proposition.]

Before MARSHALL, Chief Justice, and GRIFFIN, District Judge.

MARSHALL, Chief Justice. In point of law, the question now before the court relates to the witness himself. The attorney for the United States offers a paper in cipher, which he supposes to have proceeded from a person against whom he has preferred an indictment for high treason, and another for a misdemeanor, both of which are now before the grand jury, and produces a person said to be the secretary or clerk of the accused, who is supposed either to have copied this paper by his direction, or to be able to prove, in some other manner, that it has proceeded from his authority. To a question demanding whether he understands this paper the witness has declined giving an answer, saying that the answer might criminate himself; and it is referred to the court to decide whether the excuse he has offered be sufficient to prevent his answering the question which has been propounded to him.

It is a settled maxim of law that no man is bound to criminate himself. This maxim forms one exception to the general rule, which declares that every person is compellable to bear testimony in a court of justice. For the witness who considers himself as being within this exception it is alleged that he is, and from the nature of things must be, the sole judge of the effect of his answer; that he is consequently at liberty to refuse to answer any question if he will say upon his oath that his answer to that question might criminate himself.

When this opinion was first suggested, the court conceived the principle laid down at the bar to be too broad, and therefore required that authorities in support of it might be adduced. Authorities have been adduced, and have been considered. In all of them the court could perceive that an answer to the question propounded might criminate the witness, and he was informed that he was at liberty to refuse an answer. These cases do not appear to the court to support the principle laid down by the counsel for the witness in the full latitude in which they have stated it. There is no distinction which takes from the court the right to consider and decide whether any direct answer to the particular question propounded could be reasonably supposed to affect the witness. There may be questions no direct answer to which could, in any degree, affect him; and there is no case which goes so far as to say that he is not bound to answer such questions. The case of Goosely, in this court, is, perhaps, the strongest that has been adduced. But the general doctrine of the judge in that case must have referred to the circumstances, which showed that the answer might criminate him.

When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle

by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded. They are believed both to be preserved to a reasonable extent, and according to the true intention of the rule and of the exception to that rule, by observing that course which it is conceived courts have generally observed. It is this:

When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this statement of things, that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact. If the declaration be untrue, it is in conscience and in law as much a perjury as if he had declared any other untruth upon his oath; as it is one of those cases in which the rule of law must be abandoned, or the oath of the witness be received.

The counsel for the United States have also laid down this rule according to their understanding of it; but they appear to the court to have made it as much too narrow as the counsel for the witness have made it too broad. According to their statement a witness can never refuse to answer any question unless that answer, unconnected with other testimony, would be sufficient to convict him of a crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description.

What testimony may be possessed, or is attainable, against any individual the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws.

To apply this reasoning to the particular case under consideration: To know and conceal the treason of another is misprision of treason, and is punishable by law. No witness, therefore, is compellable by law to disclose a fact which would form a necessary and essential part of this crime. If the letter in question contain evidence of treason, which is a fact not dependent on the testimony of the witness before the court, and, therefore, may be proved without the aid of his testimony; and if the witness were acquainted with that treason when the letter was written, he may probably be guilty of misprision of treason, and, therefore, the court ought not to compel him to answer any question, the answer to which might disclose his former knowledge of the contents of that letter.

But if the letter should relate to misdemeanor and not to the treason, the court is not apprized that a knowledge and concealment of the misdemeanor would expose the witness to any prosecution whatever. On this account the court was, at first, disposed to inquire whether the letter could be deciphered, in order to determine from its contents how far the witness could be examined respecting it. The court was inclined to this course from considering the question as one which might require a disclosure of the knowledge which the witness might have had of the contents of this letter when it was put in cipher, or when it was copied by himself; if, indeed, such were the fact. But, on hearing the question more particularly and precisely stated, and finding that it refers only to the present knowledge of the cipher, it appears to the court that the question may be answered without implicating the witness, because his present knowledge would not, it is believed, in a criminal prosecution, justify the inference that his knowledge was acquired previous to this trial, or afford the means of proving that fact.

The court is, therefore, of opinion that the witness may answer the question now propounded.

The gentlemen of the bar will understand the rule laid down by the court to be this: It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such a case

the witness must himself judge what his answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot be compelled to answer.