**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Danny Mack MARTIN,**
**Defendant-Appellant.**

**No. 75–3656.**

United States Court of Appeals,
Ninth Circuit.

Sept. 22, 1977.

Rehearing and Rehearing En Banc
Denied Nov. 18, 1977.

James N. Pendleton, San Diego, Cal., for defendant-appellant.

Stephen V. Petix, Asst. U. S. Atty., Terry J. Knoepp, U. S. Atty., San Diego, Cal., for plaintiff-appellee (USA).

Before SNEED and KENNEDY, Circuit Judges, and LUCAS,* District Judge.

ANTHONY M. KENNEDY, Circuit Judge:

Appellant Danny Mack Martin and codefendant Armando Macias were charged in a multiple count indictment for perpetrating various drug-related offenses. Count I charged Macias, Martin, and others with conspiring to import heroin in violation of 21 U.S.C. §§ 952, 960, and 963. Counts II through V, respectively, charged Macias, Martin and others with conspiring to possess heroin, amphetamines, cocaine, and marijuana with intent to distribute, violations of 21 U.S.C. § 841(a). The remaining counts did not pertain to Martin. Counts VI and VII charged Macias and others with conspiracy to import marijuana and conspiracy to possess marijuana with intent to distribute. Counts IX and X charged Macias and others with conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute. After a joint trial, a jury convicted Macias on all the above counts and convicted Martin on counts I through V.[1] We have affirmed

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. At the close of the Government's case, the district court granted Macias' motion for judgment of acquittal on Count VIII of the indictment (possession of marijuana). The jury was unable to reach a verdict as to Macias on count XI (possession of cocaine), and the district court below entered judgment of acquittal in favor of Macias.

Macias' conviction by separate unpublished memorandum. No. 75–3616, Sept. 22, 1977. In this opinion, we address the contentions raised by Martin's appeal. We affirm his conviction.

*Facts*

The events leading to the indictment of Martin, Macias, and others indicated that a well organized scheme was in operation to import and distribute various controlled substances. Between June and August, 1974, officers of the San Diego County Narcotics Task Force conducted an intensive surveillance of a residence in San Diego. The officers observed a number of vehicles stop briefly at the residence, including automobiles owned by persons later charged with involvement in the several drug conspiracies. Law enforcement officials ultimately determined that drugs were delivered from Mexico by agents of one Juan José Lara, and that Mary Campbell, an unindicted coconspirator, thereafter transported the drugs from the San Diego residence to other locations.

The conspiracies charged against Martin and Macias in counts I through V arose out of Mary Campbell's trip in December, 1973, to Martin's residence near Everett, Washington, where she delivered heroin, cocaine, marijuana, and amphetamines to Martin. Campbell testified at trial that although she was under the direct supervision of other individuals, Armando Macias supplied her with expense money for the trip and with Martin's phone number.

Counts VI and VII charged Macias, but not Martin, with conspiracy to import marijuana and conspiracy to possess marijuana with intent to distribute. Campbell testified that in March, 1974, Macias instructed her to purchase fifty cardboard cartons and tape to seal them. He also gave her shipping labels preaddressed with the name of his business. The labels were to be affixed to the cartons. According to Campbell, Macias directed her to fill the cartons with marijuana stored at the San Diego resi-dence. Campbell went to the San Diego residence and found the marijuana locked in an automobile. In the process of transferring the loose bricks of marijuana from the car trunk, Campbell severely injured her arm. Thereafter, an employee of Macias arrived to take possession of the marijuana.

Finally, counts IX and X charged Macias with cocaine-related conspiracies. Campbell testified that at Macias' direction, she travelled to Arizona on Thanksgiving, 1973, and picked up a package from an individual known only as "Tony." After returning, Campbell heard one of Macias' confederates refer to the substance in the package as cocaine.

We turn to Martin's assignments of error.

*Sufficiency of the Evidence*

Martin first contends that the evidence was insufficient to convict him of conspiracy to import heroin (count I) because the evidence at most shows that he was an occasional purchaser of drugs from Macias.

In examining Martin's claim, we view the evidence in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Once a conspiracy has been established, only slight evidence is necessary to connect a particular defendant to that conspiracy. *United States v. Perry*, 550 F.2d 524 (9th Cir. 1977). To establish a conspiracy, the Government need not prove the existence of a formal agreement. Rather, an agreement may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for accomplishment of a common purpose. *United States v. Camacho*, 528 F.2d 464, 469 (9th Cir. 1976).

We conclude that the evidence was wholly sufficient to support Martin's conviction on count I. According to the testimony of Mary Campbell, she travelled to Mexico on behalf of Armando Macias and others in order to bring payments to Juan

José Lara, a source of heroin. Agents of Lara delivered the contraband to San Diego. Campbell then transported automobiles containing the contraband from San Diego to Los Angeles. The Government thus adduced substantial evidence of a conspiracy to import heroin.

The proof links Martin with this conspiracy. The record indicates that Campbell delivered heroin to Martin at his residence in Washington. Martin also visited Armando Macias' warehouse in Los Angeles several times. On these occasions, Campbell met him at the airport and drove him to the warehouse. During one of these automobile rides, a conversation between Martin and Campbell made it evident that Martin was in Los Angeles to pay his drug bill. Moreover, the record indicates that Martin purchased drugs from Macias on "consignment," i. e., he could defer payment until the heroin was sold.

In May, 1974, Martin accompanied Campbell to San Diego, took possession of an amount of heroin, and returned to Washington with Campbell, who was to collect payment for the contraband after it was sold.[2] The record also indicates that Martin attempted to increase sales by frying a lactose cutting agent in order to preserve in the diluted contraband the brown color of Mexican heroin. Finally, the prosecution introduced evidence documenting calls between Martin's telephone in Washington and the phone located at Macias' warehouse in Los Angeles.

From this evidence, the jury could reasonably conclude that Martin was an important link in the scheme to import heroin from Mexico. Because Martin was permitted to purchase heroin on consignment, the jury could infer that the relationship between Macias and Martin was closer than that of mere seller and purchaser. The records of telephone calls also link Martin directly with Macias. Finally, the jury could find that Martin knew that the heroin was imported from Mexico. On his trip to San Diego in May, 1974, Martin received heroin that had only recently been delivered from Mexico. Martin's attempts to preserve the brown color of the heroin is further evidence that he was aware of the source. We think the evidence was wholly sufficient to sustain the conviction on count I.

### Failure to Produce Alibi Witnesses

Martin next asserts that because the district court refused to order certain alibi witnesses produced from Washington state at Government expense, he was denied a fair trial. The claim is without merit. Fed.R.Crim.P. 17(b) provides in part:

> Defendants Unable to Pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.   .   .   .

A motion to have a witness produced is addressed to the sound discretion of the trial court, and an indigent defendant has no absolute right to subpoena all witnesses at Government expense. *United States v. Maynard*, 485 F.2d 247, 248 (9th Cir. 1973).

In this case, the Government stipulated at trial to the testimony of the alibi witnesses, and Martin's counsel was allowed to read that testimony to the jury. Although in some cases the actual testimony of a witness may be preferable to a stipulation, in this case Martin's use of the stipulations enabled him to place before the jury evidence that was not subject to cross-examination. Further, in light of the substantial evidence adduced by the defense and the prosecution, it cannot be said that the presence of the witnesses, as opposed to their testimony, was crucial to Martin's de-

---

2. Martin, however, was arrested by state police after making a sale to a state government informant.

fense. We conclude that Martin has neither shown that, under Rule 17(b), actual presence of the alibi witnesses was necessary to an adequate defense, nor demonstrated that the district court's refusal to order that the witnesses appear at Government expense denied him a fair trial.

*Prejudicial Misjoinder*

Martin's final contention is that under Fed.R.Crim.P. 8(b) he was improperly joined for trial with Macias. Martin argues that because he was joined in an indictment that charged Macias with offenses in which Martin played no part, the joinder provisions of rule 8(b) require that his conviction be reversed.

■ Rule 8(b) provides:

Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Under this rule, when multiple defendants are involved, joinder is improper unless all offenses arise out of the same series of acts or transactions. *United States v. Satterfield*, 548 F.2d 1341 (9th Cir. 1977); *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970). It is not enough that the acts or offenses alleged are similar. *Roselli, supra.* Martin argues that counts VI, VII, IX and X pertained only to Macias, and therefore did not arise out of the same series of acts or transactions as the offenses in which both Macias and Martin were charged. Counts VI and VII charged Macias and others with conspiring to import and distribute marijuana in the Los Angeles area. Counts IX and X charged Macias with conspiracies arising out of a trip that coconspirator Campbell made to Arizona in order to purchase cocaine on behalf of Macias. It is undisputed that Martin was not involved in these conspiracies.

■ This court has taken a pragmatic approach to problems of joinder. "Although rule 8(b) standards are stated in terms of required allegations, a conviction will not be reversed on appeal if the evidence at trial establishes that joinder was proper . . . ." *United States v. Roselli*, 432 F.2d at 899 n. 33. The purpose of rule 8(b), rather than the formalities of pleading, controls the analysis of whether joinder was proper in a given case. The purpose of rule 8(b) is to balance the need to avoid the potential prejudice that may result from joining multiple defendants for trial with the need to attain trial efficiency. These objectives are best served by joinder whenever "the common activity constitutes a substantial portion of the proof of the joined charges." *Satterfield, supra,* 548 F.2d at 1344; *Roselli, supra,* 432 F.2d at 899.

■ While the question is a close one, we conclude that joinder of Martin with Macias was improper. First, looking only to the face of the indictment, it appears that Martin was misjoined because he was not alleged to have participated in any of the conspiracies alleged in counts VI, VII, IX, and X. It therefore cannot be said that all the offenses arose out of the same "series of acts or transactions" because the Government necessarily was required to adduce proof of substantially different facts in order to support conviction on the counts unrelated to Martin. *See Satterfield*, 548 F.2d at 1344. While it is true that most of the proof pertained to the first five counts, significant evidence was presented relating to the other conspiracies. For example, evidence was introduced pertaining to Mary Campbell's trip to Arizona, an overt act in furtherance of the conspiracies charged in counts IX and X. Campbell described her actions during that trip in some detail. Furthermore, as to counts VI and VII (the Los Angeles conspiracy) Campbell testified that while unloading marijuana from the trunk of an automobile, she broke her arm. That testimony was introduced by the prosecution to support the allegation in the indictment relating to counts VI and VII. In light of the substantial proof relating to

conspiracies in which Martin was not charged, we conclude that joinder was improper.

Our inquiry, however, is not at an end. Except in cases where two or more defendants have been jointly tried on wholly unrelated charges, *see Metheany v. United States*, 365 F.2d 90, 94–95 (9th Cir. 1966), joinder under rule 8(b) is subject to the harmless error rule of Fed.R.Crim.P. 52(b). *Roselli*, 432 F.2d at 901. We conclude that in this case, the error in joining Martin was harmless. First, the preponderance of the evidence introduced at trial related to the joint activity. In fact, the majority of the trial was spent detailing Campbell's trips to Washington and Macias' involvement with that trip. More significantly, the evidence of Martin's involvement in the drug ring was overwhelming. Campbell and another Government witness, Peggy Chase, gave testimony strongly implicating Martin in those conspiracies.

By contrast, the testimony pertaining to the conspiracies in which Martin had no involvement, while not insubstantial, was much less incriminating than the testimony about the joint activity. Further, the testimony relating to those unrelated offenses was not of the type calculated to cause the jury to convict Martin merely because of his association with his codefendant. *Cf. Satterfield, supra.* The Government's efforts to convict were generally devoted to connecting Macias to the conspiracies through circumstantial evidence. Finally, the district court instructed the jury that the evidence relating to counts VI, VII, IX, and X pertained only to Macias. While such an admonition will neither cure improper joinder nor always make misjoinder harmless, *see Satterfield, supra*, in this case the instruction is one factor that, along with the considerations noted above, convinces us that Martin was not prejudiced. Under the circumstances of this case, we conclude the error in joining Martin was harmless. In view of this determination, we need not consider Martin's claim that the district court abused its discretion in failing to grant his motion to sever under Fed.R. Crim.P. 14.

The judgment of conviction is AFFIRMED.