**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Dikran BERBERIAN, Defendant,**

**Steve Dadaian, Real Party In
Interest-Appellee.**

No. 84–5300.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1985.

Decided Aug. 6, 1985.

Eugene A. Wright, Circuit Judge, dissented and filed an opinion.

Robert C. Bonner, U.S. Atty., Robert L. Brosio, Robert A. Pallemon, Asst. U.S. Attys., Asst. Chief, Crim. Div., Los Angeles, Cal., for plaintiff-appellant.

Michael Avery, Boston, Mass., for defendant.

Before WRIGHT, ALARCON and NORRIS, Circuit Judges.

ALARCON, Circuit Judge:

The government appeals from an order of the district court granting Steven Dadaian's (hereinafter Dadaian) motion to quash a subpoena. The government wishes to call Dadaian as a witness at the separate trial of his codefendant Dikran Berberian (hereinafter Berberian). At such trial, the government intends to ask Dadaian to repeat the incriminating testimony he gave at his own suppression hearing.

■ We review the grant or denial of a motion to quash a subpoena for abuse of discretion. *United States v. Reed,* 726 F.2d 570, 576 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 221, 83 L.Ed.2d 151 (1984); *United States v. Martin,* 567 F.2d 849, 852 (9th Cir.1977); *Amsler v. United States,* 381 F.2d 37 (9th Cir.1967). A trial court abuses its discretion when its decision is based on an erroneous conclusion of law. *Shakey's Inc. v. Covalt,* 704 F.2d 426 (9th Cir.1983). We must decide whether it is an abuse of discretion to quash a subpoena when the witness has not been sentenced or given a formal grant of immunity by the court and the government knows that the witness intends to assert his privilege against self-incrimination.

## I

### PERTINENT FACTS

Dadaian, Berberian, and codefendants Hosepian, Yacobian, and Sarkissian (hereinafter the codefendants), were each indicted on one count of conspiracy in violation of 18 U.S.C. § 371, transportation of explosive materials in interstate commerce in violation of 18 U.S.C. § 844(d) and possession of an unregistered firearm in violation of 26 U.S.C. § 5681(d). The indictment alleged, *inter alia* that the defendants conspired to place an improvised explosive device in the office of the Honorary Turkish Consul General in Philadelphia. It further alleged that Dadaian transported dynamite and components purchased by Berberian to Boston for further transfer to Philadelphia.

Dadaian and the codefendants brought a motion to suppress evidence seized in a suitcase following a search at Logan Airport. Berberian did not join in this motion. Dadaian testified at the evidentiary hearing on his motion to suppress in order to establish that he had a reasonable expectation of privacy in the contents of the suitcase. On cross-examination, the government asked him whether any other persons were present when Dadaian packed the explosive in the suitcase. Dadaian answered "Mr. Berberian." The motion to suppress was denied.

Originally, the defendants, including Dadaian and Berberian, were to be tried jointly. On November 10, 1983, Berberian's severance motion was granted.

Dadaian's bench trial began on June 15, 1984. As Dadaian left the courtroom at the conclusion of closing arguments on August 21, 1984, he was served with a subpoena to appear and testify at Berberian's separate trial. The government stated that the subpoena was issued to secure "the testimony [Dadaian] gave at the suppression hearing" concerning Berberian's presence when Dadaian packed the explosive in the suitcase.

Dadaian filed a motion to quash the subpoena on August 28, 1984. At the hearing on this motion, the government informed the district court that it had obtained authorization from the Justice Department to seek an order compelling Dadaian to testify under a grant of immunity pursuant to 18 U.S.C. § 6002 if Dadaian invoked his Fifth Amendment privilege at the Berberian trial. The government, however, made no attempt to obtain an order granting use immunity to Dadaian from the district court.

On October 7, 1984, the district court granted Dadaian's motion to quash the subpoena and thereafter found Dadaian guilty on each count. Dadaian was not sentenced until January 25, 1985 after notice of appeal had been filed in this matter. Berberian's trial was originally set for November 6, 1984, but has been stayed pending this appeal by the government of the order quashing the subpoena.

## II

### DISPOSITIVE ISSUE

The government argues for a reversal of the order quashing the subpoena on the ground that asking a witness to repeat incriminating testimony he gave at his suppression hearing does not violate the Fourth or the Fifth Amendment. Since we conclude that the district court did not abuse its discretion in quashing the subpoena because Dadaian is protected by the Fifth Amendment from being compelled to give incriminating testimony until he is formally granted use immunity by the court, we do not reach the Fourth Amendment argument advanced by the government. Our refusal to decide this issue is "consistent with the long-established rule that [courts] will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Kremens v. Bartley*, 431 U.S. 119, 97 S.Ct. 1709, 1719, 52 L.Ed.2d 184 (1977), *quoting Liverpool N.Y. & P.S.S. Co. v. Emigration Commissioners*, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed.2d 899 (1885).

## III

### DISCUSSION

In his motion to quash the subpoena, Dadaian asserted that he could not be re-

quired to testify "until proceedings against him have been finally terminated, namely until he is acquitted or until is he found guilty, sentenced and all appeals have been exhausted." Later, in his reply memorandum in support of his motion to quash the subpoena, Dadaian also stated that "even were he to be found guilty, he would have the right to refuse to testify if such testimony could incriminate in other crimes."

In *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the Supreme Court held that "the constitutional privilege against self-incrimination protects a federal witness against incrimination under state law as well as federal law." *Id.* at 77–78, 84 S.Ct. at 1608–1609. In *United States v. Valencia,* 656 F.2d 412 (9th Cir.), *cert. denied,* 454 U.S. 877, 102 S.Ct. 356, 70 L.Ed.2d 186 (1981) we noted that "the possibility of state criminal liability convinces us that the district court did not err in permitting [the witness] to rely on his privilege." *Id.* at 416. As discussed above, the government has never requested that the court issue an order granting use immunity to Dadaian. Until the district court issues such an order, Dadaian cannot be compelled to testify.

The government contends that "[s]ince Dadaian successfully moved to quash the subpoena, the state at which it may have been necessary to grant him immunity and to seek [an immunity] order was never reached." This argument totally misperceives controlling statutes and relevant case law.

The government apparently believes that a second pretrial hearing was necessary, under the circumstances of this case, to consider the applicability of the immunity statute. The duplicative pretrial procedure contemplated by the government would be a waste of scarce judicial resources. Contrary to the government's theory, a motion to quash a subpoena is an appropriate and the most efficient procedural means of resolving the constitutional confrontation that is created whenever the prosecution

seeks to compel a witness to give self-incriminating testimony. In such a proceeding, the court can determine whether the government intends to request an order granting immunity upon a showing by the witness that he will refuse to testify. If the government declines to request an order granting immunity, the court must grant the motion to quash the subpoena in compliance with the Fifth Amendment.

At the hearing on the motion to quash the subpoena, the court asked the prosecutor what he sought to elicit from Dadaian. The prosecutor replied:

> What is crucial is the testimony he gave at the suppression hearing in which he described who was present when this suitcase was packed and he was asked what defendants were present and he said that Mr. Dikran Berberian was present when the bomb was packed in the suitcase.

█ Thus, it was clear that the government was going to call Dadaian to elicit incriminating information knowing that he would refuse to testify. Where the government intends to call a witness in order to propound incriminating questions, the witness may assert his privilege to refuse to testify. "The rule is well established that the government may not call a witness knowing that the witness will refuse to testify." *United States v. Roberts,* 503 F.2d 598, 600 (9th Cir.1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). Thus, because the government intended to ask incriminating questions and knew that the witness would refuse to testify, it was not necessary for Dadaian to wait until he was sworn before asserting his privilege against self-incrimination.

The immunity statute provides in pertinent part that a government prosecutor may request an order requiring a person to give testimony "[I]n the case of any individual who has or *may be called to testify* ... when in his judgment ... such individual has refused *or is likely to refuse to testify* or provide other information on the basis of his privilege against self-incrimination." 18 U.S.C. § 6003 (emphasis added).

Under Section 6003, the stage at which the government was authorized to request immunity was reached when Dadaian made it known that he was "likely to refuse to testify." *Id.* Furthermore, under *Roberts,* the prosecutor was prohibited from calling Dadaian as a witness until he received an order granting him use immunity.

In view of Dadaian's assertion during the proceedings to quash the subpoena that he would not testify because he was subject to prosecution for other crimes, the government was required to obtain a statutorily authorized order of immunity to protect the witness from further prosecution in any other federal or state court proceeding. *See United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984) (the Court "[declined] to extend the jurisdiction of courts to include prospective grants of use immunity in absence of the formal request that the statute requires.").

## CONCLUSION

At the time the trial judge ruled, she was aware of the following facts: (1) Dadaian had not been sentenced; (2) the government knew that Dadaian would refuse to testify at Berberian's trial; and (3) no formal grant of immunity had been requested pursuant to 18 U.S.C. § 6003. Under such circumstances, the trial judge did not abuse her discretion. The Fifth Amendment compelled her to quash the subpoena. The order of the district court is AFFIRMED.

EUGENE A. WRIGHT, Circuit Judge, dissenting:

The majority conclude that the district court properly exercised its discretion when it quashed the government's subpoena of Dadaian, because no formal grant of immunity had been requested pursuant to 18 U.S.C. § 6003. I dissent because Dadaian did not argue and the district court did not address this issue below.

Counsel for Dadaian characterized the issue before the court as "whether any immunity which could be conferred upon Mr. Dadaian under such an order would be coextensive of the privilege he would have

in the absence of such an order." Reporter's Transcript September 21, 1984 (TR), Excerpt of Record (E/R) at 46.

My review of the record convinces me that the district court quashed the subpoena because it concluded that use immunity would be inadequate to avoid infringing upon Dadaian's Fourth and Fifth Amendment rights. In light of this, it would be unfair to affirm because the government failed to formally request immunity for Dadaian since the district court made it clear such a request would be futile.

He argued that compelling him to testify in Berberian's trial, would chill his Fourth Amendment rights because testimony brought out during cross-examination at his suppression hearing provided the government with information leading to his subpoena. My analysis of the other issues requires that I reach Dadaian's Fourth Amendment claim.

Dadaian has no Fifth Amendment privilege to refuse to testify to "protect others from punishment." *Rogers v. United States,* 340 U.S. 367, 371, 71 S.Ct. 438, 441, 95 L.Ed. 344 (1951). *See also United States v. Mandujano,* 425 U.S. 564, 572, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212 (1976). The considerations that caused the Supreme Court to "find it intolerable that one constitutional right [Fifth Amendment] should have to be surrendered in order to assert another [Fourth Amendment]", are not present here. *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (testimony given at suppression hearing by defendant is not admissible as evidence at his trial on the issue of guilt).

"The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow." *McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) (quoting *McMann v. Richardson,* 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)). The issue here is whether "compelling the election impairs to an appreciable extent any of the policies behind [any] rights involved." *Id.*

Dadaian has identified no right or privilege curtailed by virtue of his having to testify at the suppression hearing. "The public has a right to every man's evidence." *Mandujano*, 425 U.S. at 564, 96 S.Ct. at 1768 (quoting *United States v. Burr*, 25 F.Cas. 38 (No. 14,692e) (CC Va. 1807) ). "[A]rriving at the truth is a fundamental goal of our legal system." *United States v. Havens*, 446 U.S. 620, 621, 100 S.Ct. 1912, 1913, 64 L.Ed.2d 559 (1980). Against this important cornerstone of our criminal justice system, Dadaian asserts a vague right to testify at his suppression hearing and thereby cast a protective cloak over evidence he would otherwise be compelled to give against his codefendant, if properly immunized.

The policies advanced by the Fourth Amendment are satisfied by allowing a defendant to testify at a suppression hearing without fear of providing the government with incriminating evidence for use against him later at trial. Once Dadaian's Fifth Amendment privilege is adequately protected, he "is much like any other potential witness." *United States v. Moore*, 682 F.2d 853, 857 n. 2 (9th Cir.1982).

No policy would be served by allowing him to insulate third parties from the untoward effects of his testimony at a subsequent trial, solely because he covered the same material while testifying at a suppression hearing. The Fourth Amendment does not require alleviation of any personal reservations a particular defendant may have about the effects of testifying at his suppression hearing.

He argues that allowing the government to subpoena him and compel his immunized testimony against a codefendant permits the government to manipulate the order of trials in multiple defendant cases and utilize suppression hearings as a discovery tool. Whatever validity this argument may have under different facts, it is inapposite here. Berberian moved to sever his trial, the government merely acquiesced. The government's cross-examination of Dadaian was well within the bounds of his testimony on direct examination and was prop-

erly allowed by the trial judge. There is no evidence here of government manipulation. I would not announce a per se rule based on hypothetical facts. The district court may deal with potential governmental abuse if and when it occurs.

I agree with the majority opinion that Dadaian's Fifth Amendment privilege extends to testimony that may tend to subject him to state prosecution. However, I disagree with the majority that the government must in every case request blanket immunity or have its subpoena quashed.

The majority cites *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975), for the proposition that Dadaian need not wait until called to testify to assert his privilege against self-incrimination. *Roberts* and the cases cited therein hold that a witness may not be called to be forced to justifiably invoke the Fifth Amendment in front of the jury. If the court does so and thereby introduces prejudicial evidence "in a form not subject to cross-examination," the defendant's confrontation rights may be violated. *Sanders v. United States*, 373 F.2d 735 (9th Cir.1967).

Although these rights may be protected by pretrial motion or objection at trial by the aggrieved defendant, I see nothing inherently wrong with addressing the issue and avoiding the potential problem in a motion to quash. However, that is not this case. The government has never objected to granting Dadaian use immunity nor has it attempted to elicit the invocation of the Fifth Amendment by Dadaian on the stand. Nor has the government on appeal argued that the court impose constructive use immunity without a formal statutory request. *See United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1248, 79 L.Ed.2d 552 (1984).

Ordinarily, a "witness must be faced with substantial hazards of self-incrimination that are real and appreciable, and must have reasonable cause to apprehend such danger from direct answers to questions asked." *United States v. Tsui*, 646 F.2d 365, 367 (9th Cir.1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852

(1982). This generally requires that a "Fifth Amendment claim be raised in response to specific questions propounded by the investigating body." *Id.* (quoting *United States v. Pierce,* 561 F.2d 735 (9th Cir. 1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978) ).

However, we have recognized an exception when the trial court "based on its knowledge of the case and of the testimony expected from the witness, can conclude that the witness could 'legitimately refuse to answer essentially all relevant question.'" *Id.* (quoting *United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir.1980) ). The record indicates that both parties agree this may be such a case. However, the trial court quashed the subpoena because it felt use immunity would inadequately preserve Dadaian's constitutional rights.

I would reverse and remand for the trial court to exercise its discretion and determine whether this case fits the narrow exception "that allows evaluation of the claimed [F]ifth [A]mendment privilege even in the absence of specific questions to the witness." *Moore,* 682 F.2d at 856.

Chambers, Circuit Judge, filed a concurring opinion.