**In re Subpoena Served on the CALI-FORNIA PUBLIC UTILITIES COMMISSION.**

**SOUTHERN CALIFORNIA EDISON COMPANY, a California corporation and San Diego Gas and Electric Company, a California corporation, Plaintiffs–Appellees,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania corporation, Defendant–Appellant.**

No. 88–1908.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1989.

Decided Dec. 15, 1989.

James W. Quinn, Mindy J. Spector, Bruce S. Meyer, Weil, Gotshal & Manges, New York City, Hill Wynne Troop & Meisinger, Los Angeles, Cal., for defendant-appellant, Westinghouse Elec. Corp.

Patrick S. Berdge, California Public Utilities Com'n, San Francisco, Cal., for plaintiff-appellee, California Public Utilities Com'n.

Before GOODWIN, Chief Judge, FLETCHER and NORRIS, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

This appeal concerns a discovery dispute involving a subpoena *duces tecum* served on the California Public Utilities Commission (CPUC) by Westinghouse Electric (Westinghouse). The dispute arises from an underlying suit over alleged defects in nuclear generators that Westinghouse sold to Southern California Edison and to San Diego Gas & Electric (hereafter collectively referred to as "Edison"). In 1976, Edison discovered leaking in some generator tubes at the San Onofre Nuclear Generating Station Unit 1 and filed suit against Westinghouse in the Los Angeles Superior Court. Two years later, the parties settled the suit and executed an agreement insulating Westinghouse from liability under the claims raised in the 1976 suit.

In 1980, Edison discovered more leaking in the generator tubes and repaired the damage at a cost of approximately $71.5 million. To recover this cost, Edison requested authority from the CPUC to increase the rates it charges customers for electric service. Edison maintained, in a hearing before the CPUC, that Westinghouse was not liable for the damage and, in fact, that Edison's chances of prevailing in a suit against Westinghouse were "less than one chance in 20,000." The CPUC issued an interim decision permitting Edison to increase rates to begin recovery of repair costs. Three months later, however, the CPUC reconsidered Edison's predicament. On March 16, 1983, the commission stated in its Second Interim Decision that Edison had not made an adequate showing that it lacked any conceivable legal remedy against Westinghouse. In order to continue collecting the higher rates from custom-

ers, Edison had "to file suit against Westinghouse as soon as possible." The CPUC also directed Edison to submit quarterly reports on the status of its litigation. Edison's suit against Westinghouse commenced two weeks later.

During pretrial discovery in the litigation, Westinghouse served a subpoena *duces tecum* on the CPUC requesting all documents, memoranda, and correspondence relating to the litigation between Edison and Westinghouse. The CPUC filed a motion to quash the subpoena and sought a protective order against discovery. It claimed that some of the documents were privileged under the Federal Rules of Civil Procedure and under California law. After viewing the documents *in camera*, the district court granted the CPUC's motion on work product and privilege grounds. The court ruled:

1. Memoranda, notes, and other documents prepared by CPUC staff attorneys, as well as questions Westinghouse wished to ask CPUC staff attorneys, were work product protected under Fed. R.Civ.P. 26(b)(3).

2. Memoranda authored by the CPUC's General Counsel and Chief Administrative Law Judge were protected by California's "deliberative processes" privilege.

3. Quarterly reports submitted by Edison to the CPUC regarding the progress of the lawsuit were privileged under California's "official information" privilege.

Pursuant to Fed.R.Civ.P. 37(a)(4), the court awarded the CPUC fees to cover the expenses incurred in connection with its motion to quash. Westinghouse took this appeal.

■ District court jurisdiction is based on 28 U.S.C. § 1332. Because a final judgment has been entered as to the underlying suit between Edison and Westinghouse, this court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[1] We review the grant or denial of a motion to quash a

subpoena for abuse of discretion. *See United States v. Berberian,* 767 F.2d 1324 (9th Cir.1985). A trial court abuses its discretion when its decision is based on an erroneous conclusion of law. *Id.* at 1324.

## I

### Attorney Work Product Protection under Federal Rule of Civil Procedure 26

■ Westinghouse's subpoena demanded that the CPUC turn over all documents which "relate in any way" to the litigation between Edison and Westinghouse, including all materials from proceedings the CPUC had held in connection with the allegedly defective generators. In its decision below, the district court held that a set of "documents either authored or gathered by CPUC staff attorneys for actual or potential use in past, pending or contemplated CPUC proceedings" was entitled to protection from discovery under Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Rule 26(b)(3) protects attorney "work product" from discovery in certain specified circumstances. The Rule provides in pertinent part:

[A] party may obtain discovery of documents and tangible things ... *prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3) (emphasis added). As the italicized language indicates, to qualify for protection against discovery under this rule, documents must have two characteristics: (1) they must be "prepared in anticipation of litigation or for trial," and (2) they must be prepared "by or for another party

---

1. This court previously ruled that the discovery order was interlocutory and could not be appealed until a final judgment had been rendered on the underlying claims. *In re Subpoena*

*Served on the California Public Utilities Commission,* 813 F.2d 1473, 1480 (9th Cir.1987). The district court has since entered a final judgment on the underlying claims.

or by or for that other party's representative." *Id.*

On appeal, Westinghouse argues that Rule 26(b)(3) does not protect materials prepared by CPUC attorneys from discovery in the present litigation, because the CPUC is not a party to the litigation between Edison and Westinghouse. We agree. Although some courts have extended the work product privilege outside the literal bounds of the rule, we conclude that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. *See Gomez v. City of Nashua,* 126 F.R.D. 432, 434 (D.N.H.1989); *FTC v. Grolier,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983) (dictum); *Chaney v. Slack,* 99 F.R.D. 531, 533 (S.D.Ga. 1983); *Galambus v. Consolidated Freightways Corp.,* 64 F.R.D. 468, 473 (N.D.Ind. 1974). *See also* C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 201–02 ("[D]ocuments prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit."). Because the CPUC is not a party to Edison's suit against Westinghouse, it cannot invoke Rule 26(b)(3) against Westinghouse's subpoena of the CPUC documents.

The CPUC argues that even though it is not a party to the Edison–Westinghouse litigation, the policy behind Rule 26(b)(3) requires that the materials in question be protected from discovery. It argues that disclosure here would defeat the key purpose of the rule, which is to safeguard the attorney-client relationship by enabling attorneys to record their thoughts and advice candidly and completely. But even if the

CPUC correctly characterizes the policy of the rule, the language of the rule makes clear that only parties and their representatives may invoke its protection. We are not free to suspend the requirement. To the extent that disclosure causes hardship to the CPUC, it is free to seek a protective order under Rule 26(c).[2] But Rule 26(b)(3) is inapplicable.

## II

### The Deliberative Process Privilege under California Law

Westinghouse also sought to obtain a memorandum written by the CPUC's general counsel to the commissioners concerning the Edison–Westinghouse litigation. In its decision below, the district court held that this memorandum was protected from discovery by California's "deliberative process" privilege. We disagree.

 In diversity actions, questions of privilege are controlled by state law. *See* Fed.R.Evid. 501; *Liew v. Breen,* 640 F.2d 1046, 1049 (9th Cir.1981). In California, the forum state here, the courts have held that litigants seeking review of agency action may not question agencies about the content of their deliberations. The leading cases are *State of California v. Superior Court,* 12 Cal.3d 237, 257–58, 115 Cal.Rptr. 497, 510–11, 524 P.2d 1281, 1294–95 (1974), and *City of Fairfield v. Superior Court,* 14 Cal.3d 768, 777, 122 Cal.Rptr. 543, 548, 537 P.2d 375, 380 (1975). In these cases, each involving review of agency action, the California Supreme Court held that California law prohibits the discovery of evidence regarding the thoughts and deliberations of the decisionmakers in reaching their decision.[3]

2. Although we express no opinion on the merits of the question whether a protective order would be appropriate in the circumstances of this case, we note that the district court might choose to consider the interest of the CPUC in the outcome of the litigation between Edison and Westinghouse. The CPUC is charged with protecting the interests of Edison's ratepayers and a significant burden on that interest could arguably be "oppress[ive]" for purposes of Rule 26(c).

3. The court based this conclusion on *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), a case involving review of an order issued by the Secretary of Agriculture, in which the Supreme Court held that the plaintiff could not interrogate the Secretary to determine whether he had considered certain evidence before issuing the order. The Court held that " 'it was not the function of the court to probe the mental processes of the Secretary.' " *Id.* at 422, 61 S.Ct. at 1004; *State of California,* 12 Cal.3d at

The discovery dispute between the CPUC and Westinghouse arises in a different context from the cases in which the California courts have applied this "deliberative processes" privilege. Westinghouse does not seek the CPUC General Counsel's memorandum for use in challenging a CPUC regulatory decision. Rather, Westinghouse seeks the document for use in its litigation against Edison, litigation to which the CPUC is not a party. So far as we are aware, California courts have never applied the "deliberative processes" privilege to discovery requests in private litigation unrelated to review of agency action. *See County of San Diego v. Superior Court*, 176 Cal.App.3d 1009, 1024–25, 222 Cal.Rptr. 484, 492–93 (1986) (reviewing cases in which the privilege has been applied).

To apply the "deliberative processes" privilege, as the CPUC requests, would require expansion of that privilege. However, under California law, courts are not free to expand the scope of existing privileges. The California Supreme Court has held that evidentiary privileges under California law come exclusively from the California Evidence Code. "The provisions of Division 8 [of the Code] relating to privileges shall govern any claim of privilege...." Cal.Evid.Code § 12(c). Accordingly, "the Legislature has codified, revised, or supplanted any privileges previously available at common law: *the courts are no longer free to modify existing privileges or to create new privileges.*" *Pitchess v. Superior Court of Los Angeles County*, 11 Cal.3d 531, 540, 113 Cal.Rptr. 897, 903, 522 P.2d 305, 311 (1974) (quoting Cal.Evid.Code § 12(c)) (emphasis added).

Division 8 of the Code, which specifies the privileges available under California law, does not refer to a "deliberative process" privilege. *See* Cal.Evid.Code §§ 930–1060 (enumerating privileges).[4] It therefore provides no authority for protecting evidence of the CPUC deliberations from

discovery in a case, such as this one, where the agency is subpoenaed as a third-party witness. Given the court's statement in *Pitchess* that the Code governs all claims of privilege, we hold that the CPUC cannot assert a "deliberative process" privilege against disclosure of the General Counsel's memorandum.

According to the CPUC, even though Edison's suit against Westinghouse does not involve direct review of agency action, the *policy* behind *State of California* and *City of Fairfield* nonetheless requires that the memorandum be protected from discovery. The privilege created in those cases, argues the CPUC, is designed to encourage candor in agency decisionmaking. If agency officials are forced to disclose the content of their deliberations, they may be reluctant to engage in frank discussion. Accepting this policy analysis as correct, we nonetheless are bound by the court's holding in *Pitchess* that "the courts are no longer free to modify existing privileges or to create new privileges." 11 Cal.3d at 540, 113 Cal. Rptr. at 903, 522 P.2d at 311. To extend the privilege recognized in *State of California* and *City of Fairfield* to cases in which the agency is called as a third-party witness would significantly expand the privilege in contravention of *Pitchess*. Accordingly, we hold that the district court erred in concluding that the General Counsel's memorandum was protected under a "deliberative processes" privilege.

## III

### The Official Information Privilege under California Law

■ The third set of documents at issue in this appeal is a group of quarterly reports submitted by Edison to the CPUC regarding the progress of the Edison–Westinghouse litigation. The district court held that these reports were protected against disclosure under subsection (b)(1)

---

510–11, 115 Cal.Rptr. 497, 524 P.2d 1281; *City of Fairfield,* 14 Cal.3d at 777, 122 Cal.Rptr. 543, 537 P.2d 375.

**4.** The only privileges relating to documents in the possession of a government agency are those

that protect the confidentiality of information supplied to agencies by private parties. *See* Cal.Evid.Code §§ 1040–42. The applicability of these provisions to the CPUC–Westinghouse discovery dispute is discussed in Part III below.

of the California law privileging "official information." Cal.Evid.Code § 1040(b)(1). Again, we must disagree.

Section 1040 of the California Evidence Code creates a qualified privilege against agency disclosure of "official information," which is defined as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public ..." Cal. Evid.Code § 1040(a). Subsection (b)(1) provides that an agency may refuse to disclose such information in the following circumstances:

(1) [When] [d]isclosure is forbidden by an act of the Congress of the United States or a statute of this state....

The CPUC argues, and the district court ruled, that Edison's quarterly reports are privileged under subsection (b)(1) because a "statute of this state"—§ 583 of the California Public Utilities Code—forbids their disclosure. Section 583 provides in pertinent part:

No information furnished to the commission [i.e., the CPUC] by a public utility ... shall be open to public inspection or made public except on order of the commission, or by the commission or a commissioner in the course of a hearing or proceeding.

Cal.Pub.Util.Code § 583.

As we read § 583, it is not a state statute that "forbids" disclosure of the Edison reports within the meaning of § 1040(b)(1). On its face, § 583 does not forbid the disclosure of any information furnished to the CPUC by utilities. Rather, the statute provides that such information will be open to the public if the commission so orders, and the commission's authority to issue such orders is unrestricted. Moreover, even in the absence of an order by the commission, the information may be made public by an individual commissioner during a commission hearing.

Although conceding that § 583 gives it complete discretion to order disclosure of official information, the CPUC argues that

subsection (b)(1) should nonetheless apply in this case, because disclosure of Edison's reports will discourage utilities from sharing information with the CPUC. Essentially, the CPUC asks us to imply a standard forbidding disclosure against the public interest into subsection (b)(1). However, the CPUC's concern is directly addressed by subsection (b)(2) of § 1040, which protects the confidentiality of official information when "[d]isclosure of the information is against the public interest...." Cal.Evid. Code § 1040(b)(2). It would be inappropriate to read an implied "disclosure against the public interest" standard into subsection (b)(1), when precisely such a standard is specified by subsection (b)(2).

In the proceedings below, the CPUC and Westinghouse both briefed the issue of whether the CPUC could avoid disclosing the Edison reports pursuant to subsection (b)(2). The district court did not rule on the issue because it concluded that subsection (b)(1) rendered the information privileged. We hold that the district court erred in applying subsection (b)(1), and remand for consideration as to whether disclosure of the reports would be contrary to the public interest within the meaning of subsection (b)(2).[5]

## IV

### The Issue of Prejudicial Harm

■ The CPUC argues that the district court's discovery order should be upheld because it caused no prejudicial harm to Westinghouse. Erroneous discovery orders will not be overturned when the error is harmless. *See, e.g., Tagupa v. Board of Directors,* 633 F.2d 1309, 1312 (9th Cir. 1980). The materials Westinghouse requested from the CPUC are clearly relevant to material issues in Westinghouse's underlying dispute with Edison. According to Westinghouse, the main purpose of the discovery request is to establish Edison's state of mind before and during the underlying lawsuits. Edison's state of mind is

---

**5.** The subsection (b)(2) privilege is a conditional one. The comment to section 1040 states that the judge must balance the consequences to the

public of disclosure against the consequences to the litigant of nondisclosure. Cal.Evid.Code § 1040 advisory committee's notes.

an essential issue of fact in both Edison's fraud claim against Westinghouse, and in Westinghouse's "abuse of process" counterclaim. The CPUC thus has failed to show that the erroneous discovery order was harmless.

V

The Award of Fees under Federal Rule of Civil Procedure 37

The district court awarded fees to the CPUC pursuant to Fed.R.Civ.P. 37(a)(4), which provides that if a discovery motion is granted, the moving party is entitled to fees incurred in connection with the motion "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Because we have ruled in Westinghouse's favor on all three issues decided by the district court, Westinghouse's opposition to the CPUC's motion to quash was justified. Accordingly, we reverse the award of fees.

REVERSED and REMANDED.